# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,
v.
VERNON ANDERSON,
Defendant and Appellant.

S253227

First Appellate District, Division Three
A136451

San Francisco City and County Superior Court
206013

---

July 23, 2020

Justice Kruger authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu, Cuéllar, and Groban concurred.

---

PEOPLE v. ANDERSON

S253227

Opinion of the Court by Kruger, J.

A jury convicted defendant Vernon Anderson of several offenses, including five counts of second degree robbery. As to each of these five counts, the operative information alleged personal firearm use enhancements that would have increased Anderson's sentence by three, four, or 10 years as to each count. (Pen. Code, § 12022.53, subd. (b); *id.*, § 12022.5, subd. (a).) But after the close of evidence, the trial court instructed the jury on a set of more serious, 25-year-to-life firearm enhancements based on a different theory: that Anderson was vicariously responsible for a coparticipant's harmful discharge of a firearm in the commission of a gang-related crime. *(Id., § 12022.53, subds. (d), (e).)* One such vicarious firearm discharge enhancement had been alleged in connection with a different count of the information, but none had been alleged in connection with the robbery counts. The jury returned true findings, and the trial court enhanced Anderson's sentence for the robberies by five consecutive additional terms of 25 years to life. The Court of Appeal affirmed.

We granted review to consider whether the trial court properly imposed the five 25-year-to-life enhancements in connection with counts as to which the enhancements had not been alleged. The answer is no. Because Anderson did not receive adequate notice that the prosecution was seeking to impose this additional punishment on these counts, we reverse and remand for resentencing.

1

## I.

Anderson, together with a group of at least five other young men, arrived at a house party in San Francisco. The host asked them to leave. They left briefly but then returned to the house with guns. Standing outside the house, the young men began demanding money from several partygoers, trying to go through their pockets and snatching their purses. One of the men — it is not clear who — then began shooting. Five of the bullets struck and killed Zachary Roche-Balsam, another partygoer who had been standing in front of the house.

Anderson was charged by information with the first degree murder of Roche-Balsam (Pen. Code, § 187) and active participation in a street gang (*id.*, § 186.22, subd. (a)). Based on the robberies of other partygoers, Anderson was originally charged with four counts of second degree robbery (*id.*, § 212.5, subd. (c)), including two completed robberies and two attempts (*id.*, §§ 664, 212.5, subd. (c)). Finally, Anderson was charged with conspiracy to commit second degree robbery (*id.*, §§ 182, subd. (a)(1), 212.5, subd. (b)) and two counts of discharging a firearm at an inhabited dwelling (*id.*, § 246). During trial, the prosecution successfully moved to amend the original information to add another attempted robbery count, for a total of five robbery counts. Other than the additional robbery count (and the enhancements attached to it, which are described further below), this first amended information was substantively identical to the original.

For each of the substantive offenses charged, the information alleged various sentence enhancements. This case concerns firearm enhancements under Penal Code section 12022.53 (section 12022.53). That provision "imposes sentence

enhancements for firearm use applicable to certain enumerated felonies. [Citations.] These enhancements vary in length, corresponding to various uses of a firearm." (*People v. Garcia* (2002) 28 Cal.4th 1166, 1171.) In connection with the murder count, which was count 1, the first amended information alleged Anderson was subject to a 25-year-to-life enhancement based on vicarious liability for the injurious discharge of a firearm by a coparticipant in a gang-related offense. (§ 12022.53, subds. (d), (e).) By contrast, in connection with each of the robbery counts, which were counts 3 through 7, the information alleged two personal use firearm enhancements — one a 10-year enhancement (*id.*, subd. (b)) and the other a three-, four-, or 10-year enhancement (*id.*, § 12022.5, subd. (a)). None of the five robbery counts included a 25-year-to-life vicarious firearm discharge enhancement allegation under section 12022.53, subdivision (e) (section 12022.53(e)).

Before trial, the prosecution offered to strike all charges and enhancements if Anderson pleaded guilty to second degree murder with a 15-year-to-life penalty, as well as to one count of robbery and one count of being an active participant in a street gang. Anderson rejected the deal. At that time, the prosecutor stated in open court that, by his calculations, Anderson, then age 25, faced approximately "60 years to life or more" if he lost at trial — a calculation apparently based on the premise that Anderson faced only one 25-year-to-life enhancement, the enhancement alleged in connection with the murder count.

At trial, the evidence connected Anderson to the robberies outside the house party in San Francisco. No witness could clearly identify the person who shot and killed Roche-Balsam, but witnesses identified Anderson as one of several people holding a gun and robbing partygoers. An expert witness opined

that Anderson was a member of a gang called Randolph Mob and that the crimes were gang related.

The trial court instructed the jury that it could find that the prosecution proved the elements of the 25-year-to-life vicarious firearm discharge enhancements under section 12022.53(e) as to the robbery counts — even though they were not alleged in the operative information — and approved verdict forms to the same effect. The record does not show definitively how this occurred, but it appears the prosecution requested this instruction as to the robbery counts after the close of the evidence. The jury convicted Anderson on all 10 counts and returned true findings on all the enhancement allegations contained in the verdict forms.

At the sentencing hearing the prosecution initially asked the court to impose the less severe 10-year personal firearm-use enhancements, which had been pleaded in the information, and to "[i]mpose and stay" the 25-year-to-life vicarious firearm discharge enhancements as to the robbery counts. Uncertain whether the court had the authority to impose and stay the enhancements, the defense asked the court to strike them altogether. After a short recess to study the issue, the prosecution pointed the court to *People v. Palacios* (2007) 41 Cal.4th 720, which held that Penal Code section 654 does not preclude imposing multiple section 12022.53 enhancements, even when the enhancements are based on a single shot fired at a single victim. (*Palacios*, at pp. 723–733.) Based on *Palacios*, the prosecution asked the trial court to impose the 25-year-to-life enhancements as to the five robbery counts after all. The defense objected on the ground that the prosecution's recommended sentence would constitute cruel and unusual punishment. (See U.S. Const., 8th Amend.) The court overruled

the objection and sentenced Anderson to a total of 189 years to life, including a total of 125 years to life for the enhancements corresponding to the five robbery counts.

On appeal, Anderson argued for the first time that the trial court erred in imposing the five unpleaded 25-year-to-life enhancements because the enhancements had not been adequately pleaded in the charging document. Anderson relied on *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*), where we held that a court could not impose a sentence under the "One Strike" law (Pen. Code, § 667.61) based on a multiple-victim circumstance not alleged in the accusatory pleading. (*Mancebo*, at p. 739.)

The Court of Appeal rejected Anderson's argument in a footnote of its unpublished opinion (*People v. Anderson* (Nov. 19, 2018, A136451)), concluding "defendant was properly sentenced in conformity with *People v. Riva* (2003) 112 Cal.App.4th 981."[1] In *Riva*, the Court of Appeal held that an information adequately pleaded a section 12022.53, subdivision (d) (section 12022.53(d)) firearm enhancement as to one count by alleging the enhancement as to other counts based on the same set of facts. (*Riva*, at pp. 1000–1003.) The court distinguished *Mancebo* on the ground that the enhancement at issue in that case had not been pleaded as to any count, while in *Riva* the relevant enhancement "was pled by number and description as

---

[1]     The Court of Appeal remanded the matter to the trial court for it to exercise its newly acquired discretion under section 12022.53, amended subdivision (h) (Stats. 2017, ch. 682, § 2), to strike the enhancements imposed under that section and for Anderson to augment the record with information relevant to his youth offender parole hearing, but otherwise affirmed.

to some of the counts in the information, just not the one on which the trial court imposed it." (*Riva*, at p. 1002.)

We granted review to decide whether the trial court erred by imposing firearm enhancements under section 12022.53(e) that were not pleaded in connection with the relevant counts.

## II.

As a rule, all sentence enhancements "shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact." (Pen. Code, § 1170.1, subd. (e) (section 1170.1(e)).) Firearm enhancements under section 12022.53(e) are no exception to this rule. Another statutory pleading provision, specific to section 12022.53 enhancements, restates the same basic point: For any of the firearm enhancements prescribed by section 12022.53 to apply, "the existence of any fact required [by the relevant provision] shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact." (§ 12022.53, subd. (j); see *People v. Garcia, supra*, 28 Cal.4th at p. 1175 [describing this provision as "simply a restatement of section 1170.1[](e)"].) And still another statutory provision, specific to the particular vicarious liability firearm enhancement at issue here, sets out its own pleading requirements: Section 12022.53(e) says the vicarious liability enhancements shall apply only if the prosecution has both "pled and proved" that the defendant committed a felony on behalf of a street gang (see Pen. Code, § 186.22) and that a "principal in the offense committed any act specified in subdivision (b), (c), or (d)" — that is, an act that would trigger a firearm enhancement had the defendant committed that act personally. (§ 12022.53(e)(1).)

Beneath all three statutory pleading requirements lies a bedrock principle of due process. " 'No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.' [Citations.] 'A criminal defendant must be given fair notice of the charges against him in order that he may have a reasonable opportunity properly to prepare a defense and avoid unfair surprise at trial.' " (*People v. Toro* (1989) 47 Cal.3d 966, 973 (*Toro*).) This goes for sentence enhancements as well as substantive offenses: A defendant has the "right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes." (*Mancebo*, *supra*, 27 Cal.4th at p. 747.)

The question before us is whether the accusatory pleading in this case gave Anderson adequate notice of the allegations that were ultimately invoked to add at least 125 years to his sentence. The information alleged a section 12022.53(e) vicarious liability enhancement as to the murder count but not as to the robbery counts. Both parties now agree that the operative information did not provide Anderson with statutorily adequate notice that the prosecution would seek to invoke vicarious liability enhancements as to each of the robberies. We agree as well.

The starting point for our inquiry is *Mancebo*. That case concerned the pleading requirements under the One Strike law, Penal Code section 667.61 (section 667.61), which provides an alternative, more severe set of penalties for certain sex offenses committed under certain enumerated circumstances. We held in *Mancebo* that the trial court had erred by imposing a One

Strike sentence based on an unpleaded multiple victim circumstance. (*Mancebo, supra*, 27 Cal.4th at pp. 739–754.) We relied primarily on the plain language of section 667.61. (*Mancebo*, at p. 743.) Section 667.61, subdivision (i), at the time, read: " 'For the penalties provided in this section to apply, the existence of any fact required under subdivision (d) or (e) shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact.' " (*Mancebo*, at p. 742, fn. 4, quoting § 667.61, former subd. (i), as amended by Stats. 1997, ch. 817, § 6, p. 5577.) Section 667.61, subdivision (f) further said that the " 'circumstances . . . required for the punishment' " under the One Strike law had to be " 'pled and proved.' " (*Mancebo*, at p. 742, fn. 4, quoting § 667.61, former subd. (f).) Even though the facts that would establish the multiple victim circumstance (i.e., that the defendant's crimes involved multiple victims) were evident from the information, nothing in the information revealed that the prosecution sought to use the multiple victim circumstance as a basis for One Strike sentencing.[2] This, we held, violated "the

_____

[2] The information had alleged two qualifying circumstances with respect to each victim. (*Mancebo, supra*, 27 Cal.4th at pp. 742–743.) As to victim Y., it had alleged kidnapping and firearm use circumstances. (*Id.* at p. 742.) As to victim R., it had alleged firearm use and binding. (*Id.* at pp. 742–743.) When it came to sentencing, the trial court imposed a One Strike sentence but also a 10-year firearm use enhancement under Penal Code section 12022.5, subdivision (a). (*Mancebo*, at p. 744.) The relevant statute prohibited the court from using the firearm use circumstances both as the basis for this 10-year firearm-use enhancement and as the basis for One Strike sentencing. (See § 667.61, subd. (f).) To get around this problem, the trial court had substituted the unpleaded multiple

explicit pleading provisions of the One Strike law," as well as the due process principles underlying them. (*Mancebo*, at p. 743; see *id.* at pp. 739, 753.) We explained that the prosecution has the power to make discretionary charging decisions, and the information was reasonably read to indicate that the prosecution had chosen to exercise that discretion in not charging a multiple victim circumstance. (*Id.* at p. 749.) The information failed to provide the defendant with fair notice that the prosecution would instead seek to rely on that allegation to increase his punishment. (*Id.* at p. 753.)

*Mancebo*'s holding was limited to the pleading requirements of section 667.1, subdivisions (f) and (i). (*Mancebo*, *supra*, 27 Cal.4th at p. 745, fn. 5.) But *Mancebo*'s reasoning was not so limited. California courts accordingly have followed *Mancebo*'s lead in interpreting various other statutory pleading requirements, including section 12022.53(e)'s requirement that certain facts must be "pled and proved" in connection with the defendant's "offense." In *People v. Botello* (2010) 183 Cal.App.4th 1014, 1022–1026, for example, two codefendants were charged with and convicted for their roles in a gang-related shooting and the jury found true allegations supporting an enhancement under section 12022.53(d) for having personally discharged a firearm in the commission of the offense, causing great bodily injury. On appeal, because no evidence showed which of the two defendants was the shooter, the People conceded the personal use enhancements could not stand. (*Botello*, at p. 1022.) But the People asked the court instead to impose vicarious liability enhancements under

victim circumstance for the pleaded firearm use circumstances. (*Mancebo*, at pp. 738–739.)

section 12022.53(e), noting that all the necessary findings had been made by the jury in connection with other charges. (*Botello*, at p. 1022.) Citing *Mancebo*, the Court of Appeal refused. (*Botello*, at pp. 1022–1027.) It explained that the accusatory pleading had charged defendants only with personal use enhancements, not vicarious liability enhancements. (*Id.* at p. 1027.) Under *Mancebo*, "to apply section 12022.53, subdivision (e)(1) for the first time on appeal would violate the express pleading requirement of that provision, and defendants' due process right to notice that subdivision (e)(1) would be used to increase their sentences." (*Botello*, at p. 1027.)

We now confirm that the reasoning of *Mancebo* applies equally to a sentence enhancement imposed under section 12022.53 and hold that the information in this case did not comport with the relevant statutory pleading requirements. Anderson was entitled to a pleading that provided him with fair notice that he faced 25-year-to-life enhancements under section 12022.53(e) as to each charged robbery offense if this was the prosecution's intent. The operative information here did not allege that a coparticipant in the robbery offenses discharged a firearm, causing great bodily injury or death; it alleged only that Anderson personally used a firearm in the commission of those crimes. The information therefore did not comply with the applicable statutory pleading requirements, nor did it comport with the due process principles underlying those requirements.

In concluding otherwise, the Court of Appeal relied on *Riva*, which concerned the pleading of enhancements under section 12022.53(d) for personally discharging a firearm. In *Riva*, the defendant had fired a gun from inside his car at the occupants of another car, injuring a nearby pedestrian. (*People v. Riva, supra,* 112 Cal.App.4th at p. 986 (*Riva*).) The defendant

was charged by information with attempted voluntary manslaughter, assault, and shooting at an occupied vehicle. (*Ibid.*) The information also alleged a firearm enhancement under section 12022.53(d) in connection with the attempted voluntary manslaughter and assault counts. (*Riva*, at p. 1000.) Although the information did not also allege a firearm enhancement in connection with the shooting-at-an-occupied-vehicle count, the verdict forms nonetheless asked the jurors to determine whether the prosecution had proved the enhancements as to all three counts, and the jury found them true as to all three. (*Ibid.*) The trial court then imposed the section 12022.53(d) enhancement only for the shooting-at-an-occupied-vehicle count — the one count as to which the enhancement was not pleaded. (*Riva*, at pp. 1000–1001.)

The Court of Appeal in *Riva* held that the information satisfied the statutory pleading requirements, notwithstanding this omission, because "the enhancement under section 12022.53[](d) was pled by number and description as to some of the counts in the information, *just not the one on which the trial court imposed it.*" (*Riva, supra*, 112 Cal.App.4th at p. 1002, italics added.) The pleading, the court ruled, thus "complied with the literal language" of section 12022.53, subdivision (j), which requires that the accusatory pleading allege the facts supporting any section 12022.53 firearm enhancement but does not expressly require that the information allege those facts in connection with a particular count. (*Riva*, at p. 1001.) The court underscored that the information in that case did allege the relevant facts supporting the enhancement in connection with other counts of the information. (*Ibid.*) The court also reasoned that the case raised no concerns about fair notice comparable to those in *Mancebo*: The information put the defendant on notice

that he had to defend against the allegation that he personally and intentionally discharged a firearm causing great bodily injury in the course of the shooting because the allegation was pleaded as to two other counts stemming from the defendant's same conduct. (*Riva*, at p. 1003.)

The Attorney General does not rely on *Riva*, instead conceding that the prosecution was required to plead the vicarious liability enhancements under section 12022.53(e) in connection with the robbery counts if it wished for the court to impose those enhancements as to those counts. We accept the concession and, further, disapprove *People v. Riva*, *supra*, 112 Cal.App.4th 981. The statutory pleading requirements of section 12022.53 and section 1170.1(e), read against the backdrop of due process, require more than simply alleging the facts supporting an enhancement somewhere in the information. (Contra, *Riva*, at p. 1001.) The pleading must provide the defendant with fair notice of the potential sentence. A pleading that alleges an enhancement as to one count does not provide fair notice that the same enhancement might be imposed as to a different count. When a pleading alleges an enhancement in connection with one count but not another, the defendant is ordinarily entitled to assume the prosecution made a discretionary choice not to pursue the enhancement on the second count, and to rely on that choice in making decisions such as whether to plead guilty or proceed to trial. (See *People v. Sweeney* (2016) 4 Cal.App.5th 295, 301 [information alleging gang enhancements under Pen. Code, § 186.22, subd. (b) did not give the defendant adequate notice that enhancement under Pen. Code, § 186.22, subd. (d) might apply].) Fair notice requires that every sentence enhancement be pleaded in

connection with every count as to which it is imposed. (See *People v. Nguyen* (2017) 18 Cal.App.5th 260, 267.)

The *Riva* court reasoned that the pleading failure there did not interfere with the defendant's ability to contest the factual basis for the allegation at trial because the same enhancement was pleaded as to other counts. (*Riva*, *supra*, 112 Cal.App.4th at p. 1003.) Given the specific circumstances of the case, the defendant was "on notice he had to defend against the allegation," and it seemed unlikely the error "affected his decision whether to plea bargain." (*Ibid.*) These are not, however, reasons to conclude that no pleading error occurred; they are reasons to conclude the error was not prejudicial. The *Riva* court erred by confusing the question whether the pleading was adequate with the separate question whether the pleading defect prejudiced the defendant (see pt. III, *post*).

Here the section 12022.53(e) vicarious firearm discharge allegation as to the murder count failed to provide Anderson with fair notice that the prosecution would seek additional vicarious firearm discharge enhancements as to each of the five robberies, with each enhancement carrying an additional penalty of 25 years to life. Indeed, Anderson had reason to believe the prosecution was exercising its discretion *not* to seek the same 25-year-to-life enhancement as to the robbery counts: With respect to those counts, the prosecution chose to allege other, lesser enhancements for personal use of a firearm under section 12022.53, subdivision (b) and Penal Code section 12022.5, subdivision (a). Insofar as the prosecution nevertheless sought to impose the uncharged vicarious liability enhancements as to the robbery counts, we agree with both parties that the operative information failed to comply with the relevant statutory pleading requirements.

We do not mean to suggest that an information that fails to plead the specific numerical subdivision of an enhancement is necessarily inadequate. (*Mancebo, supra,* 27 Cal.4th at p. 753.) Neither the relevant statutes nor the due process clause requires rigid code pleading or the incantation of magic words. But the accusatory pleading must adequately inform the defendant as to how the prosecution will seek to exercise its discretion. Here the information had to inform Anderson that he faced five additional 25-year-to-life enhancements in connection with the five robbery counts. It failed to do so.

## III.

Although the Attorney General acknowledges that the information did not satisfy the applicable statutory pleading requirements, he urges us to uphold Anderson's sentence on the ground that the jury instructions and verdict forms gave Anderson sufficient notice that he faced the five 25-year-to-life additional vicarious firearm discharge enhancements as to the robbery counts. The Attorney General makes three arguments in this vein. He first argues that, because Anderson failed to object to the instructions or verdict forms submitting the challenged vicarious firearm discharge enhancements to the jury, he impliedly consented to an informal amendment of the information. Alternatively, the Attorney General argues Anderson's failure to object forfeited his right to raise the issue on appeal. Finally, the Attorney General argues Anderson cannot show he was harmed by the pleading defect and has thus failed to establish reversible error. We reject all three arguments.

## A.

As previously noted, although the information did not plead vicarious firearm discharge enhancements with respect to the five robbery counts, the jury instructions and verdict forms nonetheless asked the jury to return findings that would support these enhancements. The record does not reveal precisely how this came to pass. But we know defense counsel did not object to the instructions or verdict forms, instead initialing the relevant documents and telling the court the instructions "appear to be in order and complete." The Attorney General argues that, by failing to object, Anderson impliedly consented to an informal amendment of the information to add the additional enhancement allegations as to the robbery counts.

Under the Penal Code, an accusatory pleading may be amended for "defect or insufficiency, at any stage of the proceedings." (Pen. Code, § 1009.) After the defendant has entered a plea, amending the accusatory pleading requires leave of court, which may be granted or denied in the court's discretion provided the amendment does not "change the offense charged" or otherwise prejudice the defendant's substantial rights. (*Ibid.*; *People v. Birks* (1998) 19 Cal.4th 108, 129.) Here the Attorney General did not seek leave to amend the information, nor was leave granted. But in certain limited circumstances, we have recognized informal, unwritten amendments as effective. This is what the Attorney General argues we should do here.

The Attorney General's argument relies primarily on *Toro*. In that case, we held that the defendant's failure to object on notice grounds to the inclusion of a lesser related offense on the verdict form forfeited his inadequate notice claim on appeal.

(*Toro, supra,* 47 Cal.3d at pp. 976–977.) We considered this failure to object to be implied consent to treat the information as informally amended to include the lesser offense. (*Ibid.*) But our willingness to imply the defendant's consent to amend from his silence rested on considerations specific to that situation. We emphasized that "submission of lesser related offenses to the jury enhances the reliability of the fact-finding process *to the benefit of both the defendant and the People.*" (*Id.* at pp. 969–970, italics added; see also *id.* at p. 977 ["Lesser related offense instructions generally are beneficial to defendants and in a given case only the defendant knows whether his substantial rights will be prejudicially affected by submitting a lesser related offense to the jury"].) This was true in *Toro* itself, where submission of the lesser related instruction to the jury permitted the defendant to escape far more severe punishment for an admitted act of violence. (*Id.* at pp. 970–971 [explaining that the defendant, who had initially been charged with attempted murder and assault with a deadly weapon, put on no defense at trial and conceded he had stabbed the victim; court was entitled to imply the defendant's consent to submit lesser related charge of battery with serious bodily injury for the jury's consideration].) We drew support from out-of-state cases holding that "instructing on a nonincluded offense may not be cited as error on appeal if the defendant had an opportunity to object to the instructions but failed to do so *and the offense is lesser in degree and penalty than the charged offense.*" (*Id.* at p. 977, italics added, citing *Ray v. State* (Fla. 1981) 403 So.2d 956, 961.)

The situation in *Toro,* in which the jury was given the option of convicting the defendant of a lesser offense, was quite different from the situation we confront in this case. Unlike the

defendant in *Toro*, Anderson derived no possible benefit from submitting the unpleaded 25-year-to-life enhancements to the jury. There is therefore no reason to presume from defense counsel's silence that Anderson consented to this procedure. (Cf., e.g., *People v. Ramirez* (1987) 189 Cal.App.3d 603, 623 ["Conviction for an uncharged greater offense not only raises the problem of notice but makes the inference of consent more difficult, as there is no reason why a defendant should acquiesce in substitution of a greater for a lesser offense."]; *People v. Haskin* (1992) 4 Cal.App.4th 1434, 1440 [applying same principle in context of sentence enhancements].)

The reasoning of *People v. Arias* (2010) 182 Cal.App.4th 1009 is persuasive on this point. In that case the Court of Appeal held that the defendant's sentences for two attempted murders violated the relevant statutory pleading requirements because the prosecution failed to allege that the offenses were committed willfully, deliberately, and with premeditation — a fact that increased the defendant's punishment. (*Id.* at pp. 1016–1020; Pen. Code, § 664, subd. (a).) The People argued the defendant impliedly consented to an informal amendment of the information by approving jury instructions and verdict forms that asked the jury to determine whether the defendant acted willfully, deliberately, and with premeditation. (*Arias*, at p. 1020.) The court rejected this argument, distinguishing *Toro*: Unlike with lesser related offense instructions, the "defense will generally have no tactical interest in presenting the jury with a new avenue for imposing greater punishment. Had the prosecution sought to amend the information to include the missing allegations, the defense may well have objected. Of course, it is the People's burden to show implied consent by the defense. Given the absence of anything in the record showing

an amendment — and because the defense had no apparent reason to consent to one — we decline to extend the *Toro* holding to this situation." (*Arias*, at p. 1021.)

Based on *People v. Sandoval* (2006) 140 Cal.App.4th 111, 132–134, the Attorney General argues courts may apply the so-called informal amendment doctrine not just where it benefits the defendant but also to allow for the addition of greater crimes or additional enhancements. In *Sandoval*, the prosecution, formally, in open court, and with the defendant and counsel present, orally requested and was granted an amendment to the information to allege a prior strike conviction that increased the defendant's sentence. (*Id.* at p. 134.) Defense counsel stated she had no objection to the amendment. (*Ibid.*) The defendant then admitted the strike in open court and signed a plea form admitting the same. (*Ibid.*) The record there made clear that the defendant "had reasonable notice of the prior strike allegation and that any defect in the form of the allegation did not prejudice [him]." (*Ibid.*) The oral amendment of the information, therefore, provided the defendant with adequate notice of the prior strike allegation. (*Ibid.*)

*Sandoval* makes clear that not every amendment to a pleading — even one that increases the defendant's potential criminal liability — need be made in writing. But the problem in this case is not just that there was no written amendment to the information. Here, in contrast to *Sandoval*, there was no hearing in open court where the prosecution asked to make an oral amendment to the information to add the section 12022.53(e) enhancements as to the robbery counts, nor was Anderson asked if he consented to the amendment, nor did the trial court ever grant such a request.

All we are left with, then, is counsel's failure to object to certain jury instructions and verdict forms that presented a set of issues to the jury that radically increased the potential penalties Anderson faced. For all the record shows, the drafting of the instructions and verdict forms may have simply been a mistake the parties did not manage to catch before it was too late. Under these circumstances, to treat defense counsel's lack of objection as acquiescence or consent would go a long way toward eroding Anderson's right to notice of the potential penalties he faced. We conclude no informal amendment of the information occurred here.

## B.

The Attorney General next argues Anderson forfeited his statutory notice claim by failing to raise it in the trial court. As noted above, when it became clear, on the day of sentencing, that the prosecution intended to ask the court to impose the 25-year-to-life enhancements as to each of the five robbery counts, defense counsel objected in writing and orally, but only on Eighth Amendment cruel and unusual punishment grounds. (See U.S. Const., 8th Amend.) She did not call the trial court's attention to any deficiency in the information as to these enhancements. We conclude, however, that the pleading failure here is the type of error we should address even though Anderson did not bring it to the trial court's attention.

As a general rule, a criminal defendant who fails to object at trial to a purportedly erroneous ruling forfeits the right to challenge that ruling on appeal. (*People v. Smith* (2001) 24 Cal.4th 849, 852.) But there are exceptions to this rule. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 881, fn. 2 (*Sheena K.*).) Anderson argues his case falls into a "narrow exception" for

" 'unauthorized sentence[s]' " or those entered in " 'excess of jurisdiction.' " (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

Anderson's argument relies heavily on *Mancebo*, where we reached the merits of the pleading deficiency issue even though the defendant had not objected at the time of sentencing. (*Mancebo*, *supra*, 27 Cal.4th at p. 749, fn. 7.) We explained: "In *People v. Scott*[, *supra*,] 9 Cal.4th 331, we held that 'complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal.' (*Id.* at p. 356.) We distinguished as outside the scope of the rule nonwaivable errors such as 'legal error resulting in an unauthorized sentence [that] commonly occurs where the court violates mandatory provisions governing the length of confinement.' (*Id.* at p. 354, fn. omitted.)" (*Mancebo*, at pp. 749–750, fn. 7.) Because the One Strike law precluded the trial court from imposing the unpleaded enhancement, leaving no room for the exercise of sentencing discretion, we held that "the waiver rule announced in *Scott* is inapplicable here." (*Id.* at p. 750, fn. 7.) Anderson reads this footnote to mean that the imposition of an unpleaded enhancement necessarily results in an unauthorized sentence.

Anderson is not alone in this reading. (See, e.g., *Mancebo*, *supra*, 27 Cal.4th at pp. 755, 758 (dis. opn. of Brown, J.) [criticizing the majority for its expansion of the unauthorized sentence doctrine].) But as subsequent cases make clear, *Mancebo* does not stand for the broad proposition that imposition of an unpleaded enhancement necessarily results in an unauthorized sentence that may be raised, and corrected, for the first time on appeal.

The unauthorized sentence doctrine is designed to provide relief from forfeiture for "obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings." (*People v. Smith, supra*, 24 Cal.4th at p. 852.) It applies when the trial court has imposed a sentence that "could not lawfully be imposed under any circumstance in the particular case." (*People v. Scott, supra*, 9 Cal.4th at p. 354.) Take, for example, a sentence in excess of the statutory maximum. An appellate court would be required to correct such an error even if raised for the first time on appeal, since such a correction would require no fact-specific inquiry and the sentence would be unlawful under any circumstances. (See *People v. Rivera* (2019) 7 Cal.5th 306, 349.)

To impose unpleaded sentence enhancements is an error of a different variety, a point we made clear in *People v. Houston* (2012) 54 Cal.4th 1186, 1227 (*Houston*). In that case, a capital defendant contended he was improperly sentenced to life imprisonment for attempted murder, in addition to his death sentence, because the indictment failed to allege that the attempted murders were willful, deliberate, and premeditated. (*Id.* at p. 1225.) Much as in this case, the defendant claimed the omission violated an express statutory pleading requirement; the relevant statute required that " 'the fact that the attempted murder was willful, deliberate, and premeditated [must be] charged in the accusatory pleading . . . .' " (*Ibid.*, quoting Pen. Code, § 664, former subd. 1, as amended by Stats. 1986, ch. 519, § 2, p. 1859.) We held that the defendant forfeited the claim. (*Houston*, at pp. 1228–1229.) The trial court had, during trial, given the defendant notice of his potential sentence on the attempted murder count and asked the parties if they had objections to instructions and verdict forms asking the jury to

determine whether the attempted murders were willful, deliberate, and premeditated. (*Id.* at p. 1227.) We distinguished a follow-on case to *Mancebo* — and, by implication, *Mancebo* itself — on the ground that the court in *Houston* "actually notified defendant of the possible sentence he faced before his case was submitted to the jury, and defendant had sufficient opportunity to object to the indictment and request additional time to formulate a defense." (*Houston*, at p. 1229.) By affirming on forfeiture grounds, *Houston* effectively rejected the notion that a pleading defect necessarily results in an unauthorized sentence.

Even so, as *Mancebo* itself illustrates, we have the power to reach the merits of Anderson's claim here, notwithstanding his failure to object below. It is well settled that an appellate court may decide an otherwise forfeited claim where the trial court has made an error affecting "an important issue of constitutional law or a substantial right." (*Sheena K.*, *supra*, 40 Cal.4th at p. 887, fn. 7.) In *Mancebo*, the trial court made such an error, and it was therefore within our discretion to correct it notwithstanding the absence of a timely objection. The trial court in this case made much the same sort of error, and we address it for much the same reasons.

First of all, the error here is clear and obvious. The trial court imposed five 25-year-to-life enhancements even though they were never pleaded, in contravention of the express pleading requirements of the relevant statutes. Second, the error affected substantial rights by depriving Anderson of timely notice of the potential sentence he faced. In this case — like *Mancebo* and unlike *Houston* — there was no midtrial discussion highlighting the prosecution's intent to seek the more serious vicarious firearm enhancements instead of the less

serious personal-use enhancements charged in the information. Rather, as discussed in more detail below (*post*, pt. C), the prosecution's intentions did not become clear until the day of the sentencing hearing. And finally, the error was one that goes to the overall fairness of the proceeding. We thus conclude this is a case where we should reach the merits of Anderson's claim.

## C.

The Attorney General's final argument is that the pleading error here was harmless because Anderson received adequate notice before the trial court imposed the sentence enhancements and could thus prepare his defense strategy accordingly. (See Pen. Code, § 960.) We disagree. The record does not support a conclusion that Anderson had adequate notice of the prosecution's intention to seek the additional section 12022.53(e) enhancements as to the robbery counts, notwithstanding the prosecution's failure to plead those enhancements in the information.

In the middle of trial, the prosecution filed proposed jury instructions that listed the Judicial Council of California Criminal Jury Instruction numbers for those instructions it planned to request. The list included CALCRIM No. 1402 — the citation for the vicarious firearm discharge instruction. But the proposed instructions did not specify whether the prosecution was asking the court to give that instruction as to the murder count or as to the robbery counts. Based on the filed information, the defense would reasonably have assumed that the prosecution planned to request the 25-year-to-life enhancement instruction only as to the murder count.

Then, the day before the parties rested, the prosecution filed a written, amended information, which did not include any

vicarious firearm enhancements as to the robbery counts. Again, it appeared the prosecution planned to exercise its discretion not to pursue the 25-year-to-life enhancements as to the five robbery counts.

After the parties rested, they reviewed the requested jury instructions with the court. It is, again, unclear from the record whether both parties knew at that time that the court intended to give the vicarious firearm discharge instruction as to the five robbery counts or only as to the murder count. In the end, the instructions and verdict forms given to the jury included the unpleaded enhancements as to the robbery counts. But even after the jury convicted, the prosecution did not ask the court to impose the vicarious firearm discharge enhancements in connection with the robbery counts. In its first two (of three) sentencing memoranda, the prosecution instead asked that the court impose lesser firearm use enhancements that had been pleaded. The prosecution's intention to ask for the five unpleaded, 25-year-to-life enhancements only became apparent on the day of the sentencing hearing.

As *Mancebo* makes clear, the purpose of a statutory pleading requirement is not simply to ensure the defendant has notice of the potential sentence on the day of sentencing. It is meant to give sufficient notice to permit the defense to make informed decisions about the case, including whether to plead guilty, how to allocate investigatory resources, and what strategy to deploy at trial. (*Mancebo*, *supra*, 27 Cal.4th at p. 752.) Here Anderson learned how many years he *might* expect to serve only just before the jury left to deliberate on his guilt, and the prosecution did not clarify its actual intentions regarding the enhancements until midway through the sentencing hearing. Indeed, on the day of sentencing, defense

counsel remarked that, up until that afternoon, she and her client "were looking at it as if 50 to life on the murder charge and the enhancement for the murder charge was the more significant charge because we weren't looking at the 12022.53 as it related to the other counts." At that point, the damage was done — it was by then too late to consider the prosecution's pretrial plea deal or reshape his trial strategy. This would be a different case if the prosecution had told Anderson from the outset that it planned to seek the section 12022.53(e) enhancements as to the robbery counts but for some reason failed to include them in the information. (See *Houston*, *supra*, 54 Cal.4th at pp. 1227–1228.) But no such discussion occurred here. Here the notice given was too late to cure the defective pleading. Anderson received inadequate notice of the potential sentence he faced, and the deficiency was not harmless.

## IV.

We reverse the judgment of the Court of Appeal and remand with instructions to remand the case to the trial court for resentencing.

**KRUGER, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Anderson

_____

**Unpublished Opinion** XXX NP opn. filed 11/19/18 – 1st Dist., Div. 3
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S253227
**Date Filed:** July 23, 2020

_____

**Court:** Superior
**County:** San Francisco
**Judge:** Anne-Christine Massullo

_____

**Counsel:**

John Ward, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala Harris and Xavier Becerra, Attorneys General, Gerald Engler, Chief Assistant Attorney General, Edward C. DuMont, State Solicitor General, Jeffrey M. Laurence, Assistant Attorney General, Samuel P. Siegel, Deputy State Solicitor General, Catherine A. Rivlin, Ann P. Wathen and Greg E. Zywicke, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

John Ward
Attorney at Law
584 Castro Street, No. 802
San Francisco, CA 94114
(415) 255-4996

Samuel P. Siegel
Deputy State Solicitor General
1300 I Street
Sacramento, CA 95819
(916) 210-6269