Filed 4/2/21  P. v. McClelland CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDRE McCLELLAND,<br><br>    Defendant and Appellant. | B303581<br>(Los Angeles County<br> Super. Ct. No. YA096735) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Scott T. Millington, Judge.  Affirmed as Modified.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Wyatt E. Bloomfield, Deputy Attorney General, for Plaintiff and Respondent.

By information, defendant Andre McClelland was charged with two counts of first degree residential robbery (Pen. Code, § 211, subd. (a)) against two victims, Michael Coleman (count 1) and George Manneh (count 2).[1]  As to each count, the information alleged two firearm enhancements (§§ 12022.53, subd. (b), 12022, subd. (a)(1)).  The information also alleged that defendant had suffered two prior convictions for robbery, each of which constituted a serious felony (§ 667, subd. (a)(1)), and a qualifying offense within the meaning of the Three Strikes law (§§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d)).  The information further alleged that defendant had suffered two prior prison commitments (§ 667.5, subd. (b)) for robbery and grand theft (§§ 211, 487).

At trial, the court granted defendant's motion to dismiss count 2. The jury found defendant guilty of first degree robbery alleged in count 1, and found true the unpled allegation (on which the court instructed) that defendant perpetrated the robbery in concert with two or more persons in an inhabited dwelling (§§ 213, subd. (a)(1)(A), 212.5, subd. (a)).  The jury also found one of the alleged firearm enhancements (§ 12022, subd. (a)(1)) to be true.[2]

In a bifurcated proceeding, defendant admitted the prior conviction allegations, and the court found them to be true.  The court

---

[1]    Unspecified references to statutes are to the Penal Code.

[2]    The court dismissed the section 12022.53, subdivision (b) allegation after the jury deadlocked as to the truth of the allegation.

denied defendant's motion to strike his prior strikes (*People v. Superior Court* (*Romero*) 13 Cal.4th 497), after which it sentenced defendant to an overall term of 26 years to life, consisting of a third-strike term of 25 years to life on count 1, plus one year for the firearm enhancement. The court struck the serious felony conviction and prior prison enhancements for purposes of sentencing.

On appeal from the judgment, defendant concedes he was "most likely . . . convicted based upon an aider and abettor theory." He contends, however, that the trial court committed reversible error by instructing the jury with CALCRIM No. 372, that flight after the commission of a crime may be considered evidence of consciousness of guilt. Defendant argues the instruction was not supported by the evidence and framed an element of robbery (asportation) as evidence of guilt, thereby lessening the People's burden of proof. Defendant also contends that this court should strike the robbery-in-concert finding (§ 213, subd. (a)(1)(A)), because it was not pleaded in the information. Finally, defendant requests that we strike the prison prior allegations (§ 667.5, subd. (b)) in light of Senate Bill No. 136 (S.B. 136).

We conclude that the flight instruction was supported by substantial evidence and constituted a correct statement of law. We find the prior prison enhancement issue moot, but strike the robbery-in-concert finding. As modified, we affirm the judgment.

## BACKGROUND

On August 6, 2017, Michael Coleman's friend introduced him to defendant while all three individuals were hanging out inside

3

Coleman's second-floor apartment. Defendant told Coleman that his friends were looking to purchase 50 pounds of marijuana. The following day, Coleman contacted defendant and confirmed that he would broker a sale for that quantity of marijuana. Coleman told defendant to come over to his apartment later in the day with approximately $70,000 in cash.

Defendant called Coleman around 7:10 p.m. to inform Coleman that he and his clients had arrived. Coleman walked down the apartment staircase, down a pathway, and into a back alley to greet defendant, who was driving a "really bright" teal-colored Mercedes S550. There were two unidentified men (John Doe 1 and John Doe 2) inside a white Denali.[3] Coleman, defendant, John Doe 1, and John Doe 2 walked up the stairwell and into Coleman's apartment. Coleman's friend, George Manneh, was sitting in a recliner chair in Coleman's living room when the men arrived.

John Doe 1 and John Doe 2 sat down on couches next to Manneh. Coleman and defendant carried four large trash bags of marijuana from Coleman's bedroom, through a hallway, and into the living room. John Doe 1 then asked, "Is that all of it?" and pulled a gun out of his backpack. When Coleman saw the gun, he "bolted" to the hallway and into his bedroom. According to Coleman, defendant "looked very

---

[3]    Because the two men were never identified, the parties referred to them as John Doe 1 and John Doe 2 at trial. Coleman also observed a black woman with blond braids driving the Denali. The woman did not go into Coleman's apartment.

surprised this was happening." As Coleman was running, John Doe 1 fired one shot right by him and yelled, "That was a warning shot." When Coleman reached an adjoining bathroom, John Doe 1 grabbed him by the arm and pointed a gun at the back of his neck. John Doe 1 threw Coleman face down on the hallway floor, zip-tied his hands behind his head, and demanded money.

Manneh, who had remained sitting in the recliner chair, observed all three men—including defendant—draw firearms in the living room "at the same time."[4] Manneh was also ordered at gunpoint to the floor on his stomach, and his hands were zip-tied behind his back.

While on the ground, Coleman heard defendant say, "What are we gonna [sic] do next?" The men told defendant to "grab the bags and go." John Doe 1 repeatedly told Coleman and Manneh not to move. Defendant and John Doe 2 left the apartment with the bags of marijuana, followed by John Doe 1.

After the men left, Coleman broke free of the zip-ties, grabbed a replica shotgun, and ran to his front door. When he did not see anyone standing outside the door, Coleman dropped the replica shotgun and ran to where he had seen defendant park his car. Coleman watched as defendant stood by the Denali and argued with both men through a car window. Defendant looked up, saw Coleman, and said, "There he is,

---

[4]    Coleman testified that he saw John Doe 1 and John Doe 2 with firearms. Coleman did not see defendant while he was on the ground and was unable to determine if he too had been holding a gun.

right there." Defendant jumped into his car and "came flying back down the alley" before driving away. The Denali also drove away.

Redondo Beach Police Department Officer Mark Chafe responded to a shots-fired call at Coleman's apartment. Inside the apartment, Chafe found zip-ties, a replica shotgun, a .40-caliber cartridge case, and a bullet hole in the bedroom floor. Defendant's wallet and cellular phone were also found on a coffee table inside Coleman's living room.

Between August 22 and 24, 2017, an investigating officer observed defendant driving a purple-red Mercedes S550. Upon inspecting the car after it had been impounded, police discovered an original coat of white paint and additional spray or wraps to change the color of the car from white to teal, and then from teal to purple-red. Police also recovered a spent .40-caliber cartridge case underneath the hood of the car. After analyzing the cases collected at Coleman's apartment and defendant's car, a criminalist concluded that both had been fired from the same gun.

Defendant did not testify in his defense.

## DISCUSSION

1. *Flight Instruction* (*CALCRIM No. 372*)

Over defendant's objection, the trial court instructed the jury with CALCRIM No. 372 as follows: "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to

decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself."[5]

"'In general, a flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt."' [Citations.] Evidence that a defendant left the scene is not alone sufficient; instead, the circumstances of departure must suggest 'a purpose to avoid being observed or arrested.' [Citations.]" (*Bonilla*, *supra*, 41 Cal.4th at p. 328; see *People v. Bradford* (1997) 14 Cal.4th 1005, 1055 (*Bradford*) [flight does not require the physical act of running away but rather "'"a purpose to avoid being observed or arrested"'"]; see also § 1127c.) We review the trial court's giving of a flight instruction for substantial evidence. (See *People v. Boyette* (2002) 29 Cal.4th 381, 438–439.)

Defendant contends that the instruction was not supported by sufficient evidence of flight. He asserts that the only evidence of flight was defendant's "immediate departure" from Coleman's apartment, which defendant characterizes as evidence of the ongoing robbery.

This argument has been rejected by the Supreme Court in *People v. Navarette* (2003) 30 Cal.4th 458 (*Navarette*). Like defendant's

---

[5]     When discussing with counsel whether to give the instruction, the court indicated that it had reviewed *People v. Bonilla* (2007) 41 Cal.4th 313 (*Bonilla*). Based on that case, the court found the instruction to be appropriate "based upon the arguments of defense counsel that [defendant] did not know this was going to happen and the arguments of the People that he didn't stop and say are you okay, I didn't know this was going to happen."

argument here, the defendant in that case argued that the evidence of his fleeing with the victim's property was evidence of an ongoing robbery and could not be used to establish consciousness of guilt. (*Id.* at p. 502.) The Court disagreed: "Though the crime of robbery continues 'as long as the loot is being carried away to a place of temporary safety,' 'for purposes of establishing guilt, the asportation requirement is initially *satisfied* by evidence of slight movement.' (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165.) Therefore, defendant did not need to flee the scene of his crimes to be guilty of robbery, and his flight is evidence of his consciousness of that guilt." (*Id.* at p. 502.)[6]

Moreover, defendant's conduct in fleeing the scene of the robbery certainly supported the inference that his purpose in driving away was to avoid being arrested. Coleman testified that after breaking free, he watched as defendant stood in the alley and argued with John Does 1 and 2, who were inside the Denali. Then, defendant looked up, saw Coleman, and said, "There he is, right there." Defendant immediately jumped into his car and "came flying back down the alley" before driving away. Obviously, the jury was free to infer that defendant fled because Coleman had freed himself and defendant feared that the police might be on the way. The trial court did not err in giving the flight instruction.

---

[6] Defendant requests that we "find [*Navarette*] wrongly decided." As a court of inferior jurisdiction, we may not overrule *Navarette* and are instead bound by it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

In a related argument, defendant contends the court lessened the People's burden of proof by using the flight instruction to frame "an undisputed element of the crime [(asportation)] as evidence of [defendant's] guilt." The case law is against him. (See *People v. Tully* (2012) 54 Cal.4th 952, 1020; *People v. Mendoza* (2000) 24 Cal.4th 130, 180–181 [flight instruction does not violate due process if the suggested permissive inference to be drawn—consciousness of guilt—is one that reason and common sense justify in light of the facts proven].)

Moreover, in light of defendant's concession (to which we agree) that he was convicted of robbery as an aider and abettor, his argument makes no sense. As an *aider and abettor*, defendant was convicted not because he committed the elements of robbery, including asportation, but because John Does 1 and 2 committed robbery (including the element of asportation) and because, knowing they so intended, defendant aided and abetted them in perpetration of the crime. (CALCRIM Nos. 400-401.) Thus, the flight instruction could not have been used to convict defendant in some purportedly improper way on an aiding and abetting theory, but only for the proper purpose of considering his flight as consciousness of guilt.

2.    *Robbery in Concert*

The information did not allege under section 213, subdivision (a)(1)(A) that defendant committed robbery in concert with others. However, without objection from defendant, the court declared it was going to instruct on robbery in concert, and the verdict form contained

9

an allegation under section 213, subdivision (a)(1)(A), which the jury found true.

Defendant contends that we must strike the jury's true finding for in-concert robbery because the prosecution did not plead an allegation under section 213, subdivision (a)(1)(A) in the information. We agree.

Section 213 sets forth various terms of punishment for first and second degree robbery, and separately enumerates a triad of sentences for in-concert robbery. As relevant here, subdivision (a)(1) of section 213 provides: "Robbery of the first degree is punishable as follows: [¶] (A) If the defendant, voluntarily acting in concert with two or more other persons, commits the robbery within an inhabited dwelling house . . . by imprisonment in the state prison for three, six, or nine years. [¶] (B) In all cases other than that specified in subparagraph (A), by imprisonment in the state prison for three, four, or six years."

The in-concert robbery language in subdivision (a)(1)(A) of section 213 operates as a sentence enhancement. (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 482.) Section 1170.1, subdivision (e), provides that "[a]ll enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact." Accordingly, section 1170.1, subdivision (e) (as well as principles of due process) required that the in-concert allegation be pled in the information. (*People v. Anderson* (2020) 9 Cal.5th 946, 953 (*Anderson*).) Though "[n]either the relevant statutes nor . . . due process clause requires rigid code pleading or the incantation of magic words," an accusatory pleading "must adequately inform the defendant as to how the prosecution will seek to exercise its discretion." (*Id.* at

10

p. 957; accord, *People v. Houston* (2012) 54 Cal.4th 1186, 1227 (*Houston*) ["[a] defendant has a due process right to fair notice of the allegations that will be invoked to increase the punishment for his or her crimes"].)

In this case, the information alleged that defendant committed "the crime of first degree residential robbery, in violation of Penal Code section 211." The information did not allege that defendant acted in concert with other perpetrators, nor did it reference section 213. Thus, the prosecution failed to comply with pleading requirement under section 1170.1, subdivision (e), as well as principles of due process.

The People argue that defendant forfeited the argument by failing to object to the jury instructions and verdict form. We disagree. In *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*), the Supreme Court considered the interplay between a firearm use enhancement (§ 12022.5) and the One Strike law (§ 667.61), which provides an alternative sentencing scheme for certain sex crimes under specified circumstances. (*Id.* at p. 738.) As relevant in that case, section 667.61, subdivision (a) provided for an indeterminate term of 25 years to life imprisonment if two enumerated circumstances applied to the charged offense. Former subdivision (i) provided that the existence of any fact required for the penalties provided under the One Strike law shall be alleged in the accusatory pleading and either be admitted by the defendant or found to be true by the trier of fact. If only the minimum number of qualifying circumstances (two) were pled and proved, subdivision (f), of section 667.61 required that each circumstance be used for imposing the One Strike term as opposed to another punishment under any other law. (See *Mancebo*, at p. 742.)

11

The information in *Mancebo* charged the defendant with various sex crimes against two victims. (*Mancebo*, *supra*, 27 Cal.4th at p. 738.) To obtain an indeterminate sentence under the One Strike law, the prosecution alleged two circumstances under section 667.61 as to each victim: for the first victim, the prosecutor alleged the personal use of a firearm (§§ 667.61, subd. (e)(4); 12022.5) and kidnapping (§ 667.61, subd. (e)(1)); for the other victim, the prosecution alleged the personal use of a firearm (§§ 667.61, subd. (e)(4); 12022.5) and tying or binding the victim (§ 667.61, subd. (e)(6)). (*Mancebo*, *supra*, at p. 738.) The prosecutor also alleged as a separate enhancement in each crime personal use of a firearm under section 12022.5. (*Ibid.*) The jury found the One Strike circumstances and firearm use to be true. (*Id.* at p. 740.)

The trial court imposed a One Strike term of 25 years to life on each qualifying conviction, plus a separate term of 10 years for the firearm use under section 12022.5. (*Mancebo*, *supra*, 27 Cal.4th at p. 740 & fn. 2.) To reach this result, the court substituted an uncharged circumstance of multiple victims (§ 667.61, subd. (e)(5)) for each charged circumstance of firearm use. (*Ibid.*)

The Supreme Court held that the pleading requirement in former subdivision (i) of section 667.61 precluded the use of the uncharged multiple victim circumstance to impose a One Strike sentence. (*Mancebo*, *supra*, 27 Cal.4th at p. 743.) The court rejected the People's alternative contention that the defendant had forfeited the issue by the failure to object at the sentencing hearing. (*Id.* at pp. 749–750, fn. 7.) By imposing an additional term of imprisonment for the firearm

12

enhancement, the trial court had violated the "'mandatory provisions'" in section 667.61 limiting use of the firearm circumstance found under section 12022.5 to impose a One Strike term.  Because the error amounted to an unauthorized sentence, the court found that forfeiture did not apply.  (*Ibid.*)

In *Anderson,* the Court clarified the reach of *Mancebo* when considering "an error of a different variety."  (*Anderson*, 9 Cal.5th at p. 962.)  In *Anderson*, the trial court imposed 25-year-to-life firearm enhancements (§ 12022.53, subds. (d), (e)) in connection with counts as to which the enhancements had not been alleged in the accusatory pleading.  (*Id.* at p. 950.)  On appeal, the defendant relied on *Mancebo* to argue that imposition of sentence as to the unpled enhancements could be corrected at any time as an unauthorized sentence.  (*Id.* at p. 961.)  The Court did not agree.  (*Id.* at p. 962 ["*Mancebo* does not stand for the broad proposition that imposition of an un[pled] enhancement necessarily results in an unauthorized sentence"].) Despite the defendant's failure to raise the issue at trial, however, the *Anderson* Court addressed the merits of his claim after finding the trial court had made a clear error "affecting 'an important issue of constitutional law or a substantial right.' [Citation.]"  (*Id.* at p. 963.) Specifically, the Court found that the error had violated the express pleading requirements in sections 1170.1 and 12022.53, and had deprived the defendant of timely notice of the potential sentence he faced.  (*Id.* at p. 964.)

13

We reach defendant's claim in this case for the same reasons. The triad of sentences for in-concert robbery (3, 6, 9 years) is certainly higher than first degree robbery (3, 4, 6 years). It is not at all clear if defendant was ever notified of this distinction by the prosecution, defense counsel, or the trial court. (Compare, *Houston, supra,* 54 Cal.4th at p. 1229 [application of forfeiture where trial court "actually notified defendant of the possible sentence he faced before his case was submitted to the jury, and defendant had sufficient opportunity to object to the indictment and request additional time to formulate a defense"]; *Anderson, supra,* 9 Cal.5th at p. 963 ["unlike *Houston*—there was no midtrial discussion highlighting the prosecution's intent to seek" the unpled enhancements].)

Anticipating this result, the People argue that the error was not prejudicial, because the jury found the in-concert allegations to be true, and the evidence overwhelmingly supported the finding. The argument misses the mark. The failure to adequately inform defendant of the enhancement before or during trial prevented him from making "informed decisions about the case, including whether to plead guilty, how to allocate investigatory resources, and what strategy to deploy at trial." (*Anderson, supra,* 9 Cal.5th at p. 964; *Mancebo, supra,* 27 Cal.4th at p. 752.) Without any showing in the record that defendant was on notice of the increased triad of sentences, we cannot say the error did not affect his ability to make significant decisions about the case.

Thus, we order that the section 213, subdivision (a)(1)(A) enhancing allegation be stricken as to count 1 even though it was not

14

imposed as part of defendant's current sentence. (See *Mancebo, supra,* at p. 754; *People v. Fuentes* (2016) 1 Cal.5th 218, 225.)

3. *Senate Bill No. 136*

Finally, defendant asks that we strike both one-year prior prison term enhancements (§ 667.5, subd. (b)) in light of Senate Bill No. 136. However, the trial court struck prior prison enhancements at sentencing, and thus the issue is moot. (See *People v. DeLong* (2002) 101 Cal.App.4th 482, 486.)

## DISPOSITION

The judgment is modified to strike the in-concert robbery finding set forth under section 213, subdivision (a)(1)(A) in count 1. As modified, the judgment is affirmed.

The Clerk of the Superior Court is directed to prepare and transmit to the Department of Corrections and Rehabilitation a corrected abstract of judgment and minutes reflecting our disposition.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.

We concur:


COLLINS, J.                          CURREY J.


15