Filed 8/27/25  P. v. Johnson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100050 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE008519) |
| v. | |
| MICHAEL JOHNSON et al., | |
| Defendants and Appellants. | |

A jury found defendants Michael Johnson and Ahmaad Rashad Chaney guilty of attempted murder and found true a firearm enhancement after evidence at trial indicated defendants participated in a shooting.  Defendants appeal, making several challenges to their convictions.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendants were charged with attempted murder and two enhancements: (1) being principals in the offense and at least one principal intentionally discharged a

1

firearm causing great bodily injury "within the meaning of Penal Code[1] [s]ection 12022.53[, subdivisions (b), (c), (d),] and (e)(1)"; and (2) the offense was committed for the benefit of a criminal street gang pursuant to section 186.22, subdivision (b)(1).

I

*Trial Testimony*

B.M. was shot on the evening of May 26, 2020, on Center Parkway in Sacramento. Witnesses saw three men with masks get out of a white car, walk toward B.M., pull out concealed firearms, and fire multiple rounds at B.M. as he stood next to his car with two other occupants. E.R. testified she was next to B.M. during the shooting but did not see the shooters nor was she shot herself.

Video taken from cameras near the scene of the shooting showed the shooters arrived at the scene in a white car. The footage showed one male getting out of the front passenger seat "wearing a black hooded sweatshirt, khaki-colored pants and white tennis shoes." Another male was shown getting out from behind the driver's seat "wearing a black hooded sweatshirt, light-colored jeans and some black and light-colored Jordan 13 shoes." A third male was shown getting out from behind the front passenger seat but only the fact he was "wearing a hooded sweatshirt" could be seen on the footage. The video also showed the first person leaving the car "was holding his waistband and hiding his hand underneath his hooded sweatshirt."

Law enforcement officers found the shooters' white car at a house early the morning of May 27, 2020, and watched it until it left shortly after. Officers then pulled over the white car and arrested the occupants, which included defendants. Johnson was wearing clothes matching the male from the video who got out of the front passenger seat and Chaney was wearing clothes matching the second male who got out from behind the

---

1        Further undesignated section references are to the Penal Code.

2

driver's seat, including "Jordan 13s" that are "uncommon for people to have." Johnson also had two .40-caliber firearms at the time of his arrest, including a Taurus.

B.M. survived but was shot seven or eight times, including in the back of his shoulder, his lower right abdomen, and his hand. Twelve expended rounds were recovered at the scene, three were .40-caliber and nine were nine-millimeter. Tests showed all three .40-caliber casings found at the scene of the shooting came from the Taurus firearm found on Johnson, six of the nine-millimeter casings came from one gun, and three came from another gun. The car near B.M. had three bullet holes.

Officers searched the white car and found additional clothing and masks consistent with clothing worn by the shooters seen in the videos. Defendants' DNA and gunshot residue were present on the clothing. Around the time of the shooting, cell tower data showed codefendant Deshun Lamont Williams, who is not a party to this appeal, in the vicinity of the shooting and then at the house where the white car was found. Defendants' cell phones were in the same area of this house right after the shooting and another video showed Johnson and Chaney getting out of the white car at this house minutes after the shooting. Officers also searched Williams's house, where the white car was registered, and found, among other items, a backpack with a bill of sale in Chaney's name.

II

*Gang Evidence*

Before trial, the trial court granted Johnson's motion to bifurcate the trial on the merits from the trial on the gang allegation for both defendants. Johnson also filed a motion in limine seeking to exclude any gang evidence from the merits trial. The prosecutor's motions in limine included a request to introduce evidence of gang affiliation. After the parties argued on admission of the gang evidence, the trial court ruled the evidence admissible. The court stated, "I do find that this gang evidence is unquestionably relevant; that it makes the pieces connect. It ties defendants to one

3

another. It is specifically relevant to motive, and also to intent, which, as I said, is a less-compelling issue. And I do find that given all of those considerations, that it will be admissible in this case and that it's not going to be unduly time-consuming or unduly prejudicial."

At trial, a gang expert testified he believed defendants were members of the Oak Park Bloods criminal street gang. This opinion was based on a review of defendants' social media profiles showing gang insignia and use of gang hand signs, as well as defendants' involvement in "gang-related crime," without elaboration on what these crimes were. Paraphernalia associated with the Oak Park Bloods was also found at Williams's house. The day before the shooting, members of the Oak Park Bloods, including Williams and Chaney, were beat up in a fight with a rival gang. Williams's text messages indicated he wanted retribution against the rival gang. Shortly after these messages, defendants shot B.M. in rival gang territory. Even though there was no evidence B.M. was a member of a gang, the expert testified he believed the shooting of B.M. was motivated by gang allegiance.

The jury was instructed it could consider gang evidence only for motive, intent, and witnesses' credibility, with the specific admonishment: "You may not conclude from this evidence that the [d]efendant is a person of bad character or that he has a disposition to commit crime."

### III

#### *Verdicts And Sentencing*

The jury found defendants guilty of attempted murder and found true defendants personally and intentionally discharged a firearm causing great bodily injury under section 12022.53, subdivision (d). The jury was hung on the gang allegations at the bifurcated trial. The prosecutor dismissed the gang enhancement as to Johnson but the court found the gang enhancement true as to Williams and Chaney at a subsequent court trial. At the sentencing hearing on December 8, 2023, the trial court reduced the firearm

enhancements to a violation of section 12022.53, subdivision (c), and sentenced each defendant to a total term of 27 years to life.

Defendants appeal.

DISCUSSION

I

*The Attempted Murder Convictions Were Supported By Substantial Evidence*

Defendants challenge their attempted murder convictions for a lack of substantial evidence, but for different reasons. We will address each defendant's arguments separately and disagree with both.

A

*Legal Standards*

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) "We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*Ibid.*) " 'The uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable.' " (*People v. Riazati* (2011) 195 Cal.App.4th 514, 532.)

The elements of "[a]ttempted murder [include] the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623.)

B

*There Was Substantial Evidence Johnson Acted With The Intent To Kill*

Johnson concedes there was substantial evidence he was "present at the scene of the shooting and fired a gun." Johnson instead challenges the evidence he had the requisite intent for attempted murder, arguing: "Because of the lack of clarity as to why anyone at the scene was firing a gun and which shooter was firing at which bystander, the jury must have speculated instead of properly concluding the specific intent element of attempted murder was satisfied." Thus, Johnson continues, "The jury did not receive sufficient evidence to know who, if anyone, Johnson was shooting at, or why he was shooting." We disagree.

There was ample evidence Johnson shot at B.M. with the intent to kill. Witnesses testified Johnson got out of the white car, walked toward B.M. obscuring his firearm, and then shot at B.M. at close range. Even if we assume Johnson fired only three times and somehow missed B.M. each time, he necessarily shot near B.M. because only one bullet was unaccounted for and the rest either struck B.M. or the car right next to him. As stated by our Supreme Court: " 'There is rarely direct evidence of a defendant's intent. Such intent must usually be derived from all the circumstances of the attempt, including the defendant's actions. [Citation.] The act of firing toward a victim at a close, but not point blank, range "in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill." ' " (*People v. Smith* (2005) 37 Cal.4th 733, 741; see *People v. Houston* (2012) 54 Cal.4th 1186, 1218 (*Houston*).) Johnson also coordinated the attack with two other shooters who both shot only B.M. and did so eight times, strengthening the inference Johnson was also shooting at B.M. These circumstances firmly establish substantial evidence Johnson intended to kill B.M., notwithstanding the presence of other bystanders.

Determining why Johnson shot at B.M. with the intent to kill is not essential. The prosecutor was not required to prove beyond a reasonable doubt why defendants shot

6

B.M. because "motive is not an element of the crime of attempted murder." (*Houston*, *supra*, 54 Cal.4th at p. 1218.) Motive can help establish intent, as we will discuss below when analyzing the gang evidence, but it is not necessary to establish intent or any other aspect of the crime. Whether the jury speculated as to Johnson's motive therefore does not undermine Johnson's attempted murder conviction.

C

*There Was Substantial Evidence Chaney Was A Shooter*

Chaney argues there was no substantial evidence he was one of the three shooters. Chaney relies on the fact he "was not identified as one of the assailants by any of the eyewitnesses to the crime." We disagree.

There is ample evidence establishing Chaney was one of the shooters. This included a video and cell tower data establishing Chaney was in the white car within minutes of the shooting; the clothes Chaney was wearing when arrested the day after the shooting matched some of the clothes worn by one of the shooters, including "uncommon" Jordan 13 shoes; and Chaney's DNA was found on other clothes from the white car that matched clothing worn by one of the shooters and this clothing also had gunshot residue on it. All of this provides substantial evidence supporting the jury finding Chaney was one of the three shooters.

Chaney also makes a similar motive argument as Johnson, contending he "had no reason to shoot complete strangers." We reject this argument for the same reasons we rejected Johnson's motive argument.

II

*Defendants Have Not Established Reversible*

*Error For The Firearm Enhancements*

Both defendants contend their firearm enhancements lacked substantial evidence. Johnson argues there was no evidence which firearms fired the bullets striking B.M., causing great bodily injury to justify the section 12022.53, subdivision (d) enhancement

7

the jury found true against him.  Johnson acknowledges the trial court lowered the enhancement to a section 12022.53, subdivision (c) enhancement, which requires only that the defendant discharged the gun, something Johnson concedes he did.  But Johnson argues we should still reverse to allow the trial court to start with a section 12022.53, subdivision (c) enhancement to see if the court will lower the enhancement further.  Chaney joins Johnson's argument.  We disagree.

Even if we assume the original enhancement lacked substantial evidence, defendants do not sufficiently support their arguments for remand.  Defendants do not contend their section 12022.53, subdivision (c) enhancements lacked substantial evidence or that the sentences they are serving on the enhancements are invalid.  They instead implore us to speculate on what the trial court would have done if starting from a section 12202.53, subdivision (c) finding, and do so with conclusory arguments lacking record citations and legal citations supporting their arguments.  For example, Johnson contends, "[A] trial court's sentencing choices should start from a proper place where the entirety of the verdict is supported by substantial evidence."  But he provides no legal support for this proposition nor argues the trial court abused its discretion by selecting the enhancement it did.  Further, Johnson does not analyze why remand specifically would be required for his own sentence when the trial court could originally have modified the enhancements to below section 12022.53, subdivision (c) at the time of the original sentencing hearing but did not.  We will not develop arguments for defendants and therefore conclude there was no error relating to the firearm enhancements. (*Carmichael v. Café Sevilla of Riverside, Inc.* (2025) 108 Cal.App.5th 292, 297 ["We will not develop [appellants'] argument for them"].)

III

*The Trial Court Did Not Err By Admitting The Gang Evidence*

Both defendants make substantially similar arguments challenging the gang evidence admitted at the merits trial.  Johnson contends, "The gang evidence had little

8

probative value. It did not show why Johnson and his co-defendants' purported membership in a gang would cause them to shoot [B.M.] or the other bystanders at the scene; none of whom were identified as gang members." Johnson continues, "On the other hand, the admission of the gang evidence was unduly prejudicial to the defense in [a] manner that would likely cause the jury to convict on an improper basis." Chaney similarly argues, "[T]here was no evidence that suggested any gang motivation to murder the particular victim in this case." We disagree.

A

*Legal Standards*

"Only relevant evidence is admissible at trial. [Citation.] Under Evidence Code section 210, relevant evidence is evidence 'having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' A trial court has 'considerable discretion' in determining the relevance of evidence. [Citation.] Similarly, the court has broad discretion under Evidence Code section 352 to exclude even relevant evidence if it determines the probative value of the evidence is substantially outweighed by its possible prejudicial effects. [Citation.] An appellate court reviews a [trial] court's rulings regarding relevancy and admissibility under Evidence Code section 352 for abuse of discretion. [Citation.] We will not reverse a court's ruling on such matters unless it is shown ' "the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Merriman* (2014) 60 Cal.4th 1, 74.)

"The [prosecution is] generally entitled to introduce evidence of a defendant's gang affiliation and activity if it is relevant to the charged offense. [Citation.] 'Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime.' [Citation.] Even

9

when it is relevant, however, 'courts should carefully scrutinize evidence of a defendant's gang membership because such evidence "creates a risk the jury will improperly infer the defendant has a criminal disposition and is therefore guilty of the offense charged." ' " (*People v. Chhoun* (2021) 11 Cal.5th 1, 31.)

B

*There Was No Abuse Of Discretion In Admitting The Gang Evidence*

Defendants are correct that there was no evidence B.M. was a member of any gang. But that is a reason why this evidence was relevant. Defendants had no connection to B.M. and yet they and a fellow gang associate collectively fired 12 bullets at him. The gang evidence filled in motivational gaps. This evidence showed defendants were associated with the Oak Park Bloods, whose members lost in a brawl with a rival gang the day before the shooting. Williams texted he sought revenge for the brawl right before the shooting. And B.M. was shot in territory of the Oak Park Bloods's rival gang. The expert therefore testified he believed the shooting of B.M. was motivated by gang allegiance.

As mentioned, motive is not an element of attempted murder. (*Houston*, *supra*, 54 Cal.4th at p. 1218.) But "motive is often probative of an intent to kill." (*Ibid*.) That was the case here. The gang evidence showed not only why defendants shot B.M., but also made it more likely they shot B.M. with an intent to kill because they were gang members shooting in a rival gang's territory. (See *People v. Francisco* (1994) 22 Cal.App.4th 1180, 1184-1185, 1192 [finding an intent to kill may reasonably be inferred when a gang member fires multiple shots at people in rival gang territory].) Though the nongang evidence was sufficiently substantial to support an intent to kill finding, as we concluded above, the gang evidence was still probative in making this inference stronger.

Any prejudice was limited. The prosecutor here introduced only what was needed to establish defendants were members of the Oak Park Bloods and the events leading up

10

to the shooting. The gang expert testified defendants committed "gang-related crimes," but only did so in detailing the reasons he believed they were gang members without providing any further context or description of these crimes. Defendants also fail to point to anything as inflammatory in the gang expert's testimony as the evidence related to the charged acts—shooting at someone multiple times with an intent to kill—that would inflame the jury to be biased against defendants. (See *People v. Camacho* (2022) 14 Cal.5th 77, 121 ["In light of the brutality of the charged crimes, admission of evidence that [the] defendant used offensive language in describing unperformed acts of violence did not create an intolerable risk of prejudice"].) We therefore conclude the trial court did not abuse its discretion in admitting the gang evidence.

IV

*There Was No Reversible Error With The Closing Arguments*

Defendants next argue there was prosecutorial error made during the prosecutor's closing arguments. Johnson concedes there were no objections to these statements during trial, which forfeited "Johnson's ability to directly raise that misconduct on direct appeal." But Johnson asserts he suffered ineffective assistance of counsel for the forfeiture. Chaney adopts Johnson's arguments.

We accept defendants' concessions they forfeited any claim of prosecutorial error by failing to object during the trial. "In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition; only if an admonition would not have cured the harm is the claim of misconduct preserved for review." (*People v. Alfaro* (2007) 41 Cal.4th 1277, 1328.) We accordingly address their claims of ineffective assistance of counsel and conclude no prejudicial error occurred.

A

*Additional Background*

During closing argument, with respect to Johnson's gang ties and state of mind after the shooting, the prosecutor stated the following: "Now, this is [Johnson] and his

11

post, and you can see right under -- right under his -- this is the main page on his -- whole lot of gang shit. Ya heard?

"They are not hiding it. They are not hiding it. They don't -- you know, they don't want you to believe it when you get in here, right, under these circumstances, but they're not hiding it. It's all over social media. Right there he is saying -- he's telling you exactly what he's about: A whole lot of gang shit.

"This is him with all his friends. And, again, I will just reiterate, if this was [the] only thing these guys were doing, sitting around, putting up signs, we would not be here. They are not being criminalized because of the neighborhood . . . because of the neighborhood they grew up in. Lots of people grew up in Oak Park and have nothing to do with the Oak Park Bloods.

"But these guys are Oak Park Bloods. They are gangsters, and they want you to know: Gives two fucks who gets hit. Bitch, I'm airing out the crowd. And that's what he did. He aired out the crowd. [¶] [E.R.] amazingly was not hit by any of those -- any of those weapons. I don't know that [B.M.] was a hero in this particular instance, but he certainly took a lot of bullets for [E.R.]. They were right there in the 'V' of that car. They were together, and she very easily could have been shot multiple times, right? He doesn't care. He doesn't give two whits about it. Still doesn't care. Guaranteed."

While encouraging the jury to find the firearm enhancements true under section 12022.53, subdivision (d), the prosecutor stated the following: "Once you have decided that the [prosecution has] proved that each defendant personally discharged and intentionally discharged [a firearm], you have to decide whether or not those acts caused great bodily injury to a person. Again, if you look at the evidence in this case, it's clear each one of those defendants, each one of those shooters caused great bodily injury. We have 12 bullets, and we have seven to eight wounds on [B.M]. So each one of those -- each one of those defendants hurled -- again, hurled tiny pieces of metal -- not so tiny to [B.M.], but into the body of [B.M.] to kill him."

12

The jury's instructions included the instruction "[n]othing that the attorneys say is evidence."

B

*Legal Standards*

Ineffective assistance claims are governed by a two-prong test under which a defendant must show both (1) counsel's performance was deficient and (2) the deficient performance prejudiced their defense. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." (*Id*. at p. 700.)

To show prejudice, defendants must show a reasonable probability that they would have received a more favorable result had counsel's performance not been deficient. (*Strickland*, *supra*, 466 U.S. at pp. 694-695.) "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . .  [A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." (*Id*. at pp. 695-696.) "If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient." (*In re Crew* (2011) 52 Cal.4th 126, 150.)

C

*Defendants Do Not Establish Prejudice From Any Ineffective Assistance*

Johnson, and Chaney by adoption, contend "the prosecutor committed reversible misconduct in closing argument" in five ways:  (1) "by effectively claim[ing] that Johnson was guilty because of his membership in a gang," (2) "personally guaranteeing Johnson lacked remorse," (3) "intimating that Johnson's social media post was a threat to the jurors," (4) "by improperly arguing Johnson's social media post about 'airing out the crowd' referred to the May 26th shooting," and (5) "by arguing facts not in evidence as it related to the section 12022.53, subdivision (d) enhancement."  Johnson contends his

13

counsel's failure to object to these statements was prejudicial because "the evidence supporting the attempted murder charge and firearm enhancement had serious deficiencies. In such a case, it is reasonably probable that the prosecution's misconduct during summation caused the jury to reach a verdict on an improper basis not grounded in the appropriate quantum of proof." We disagree and conclude defendants cannot demonstrate prejudice.

Defendants' first four claims of prosecutor error go to the attempted murder conviction. But as discussed above, there was plenty of evidence establishing defendants' attempted murder convictions. Eyewitness testimony, video recordings, DNA evidence, gunpowder residue, cell tower data, and Chaney's bill of sale established defendants shot at B.M., collectively striking him eight times. The jury was also instructed, "Nothing that the attorneys say is evidence." Considering the totality of the evidence before the jury, defense counsels' failure to object to the four challenged statements in the prosecutor's closing argument does not suggest a reasonable likelihood the jury relied on the prosecutor's statements in reaching its decision.

This is also true for the prosecutor's firearm enhancement statement. Defendants contend the prosecutor erred when he claimed "each one of those defendants" shot B.M., after previously admitting to the trial court, when discussing the instruction for the firearm enhancement: "I can't prove which defendant was shooting a .40[-caliber]. I can't prove which defendant was shooting a [nine-millimeter]." Again, defendants have not shown prejudice under *Strickland*.

Defendants must show the *result* would have been different had defendants' counsel objected to the prosecutor's offending statement. (*Strickland*, *supra*, 466 U.S. at p. 694.) Defendants have not done this because the trial court already lowered this firearm enhancement to section 12022.53, subdivision (c), which requires the prosecution to show each defendant intentionally discharged a weapon. Similar to the above discussion on the enhancements, defendants do not establish how issues related to a

14

section 12022.53, subdivision (d) enhancement could have any impact on their sentences that are based on section 12022.53, subdivision (c) enhancements. Defendants consequently have not established prejudicial error based on their counsel failing to object to these statements.

V

*Johnson Forfeited His Notice Challenge To The Firearm Enhancement*

Johnson next contends he was charged with the firearm enhancement pursuant to a theory of vicarious liability under section 12022.53, subdivision (e), which requires a felony being committed for a criminal street gang, something never found true for Johnson. Though the jury was not instructed on vicarious liability for the firearm enhancement, Johnson contends, "[T]he lack of notice as to personal use versus vicarious use firearm enhancement should still warrant reversal." We disagree.

Johnson again acknowledges he did not object to this issue below. Where a defendant fails to object at trial to the adequacy of the notice he received, any such objection is deemed forfeited. (*Houston*, *supra*, 54 Cal.4th at p. 1227.) Relying on *People v. Anderson* (2020) 9 Cal.5th 946, Johnson argues we should exercise our discretion to consider the merits of the argument. Our Supreme Court in *Anderson* noted, "It is well settled that an appellate court may decide an otherwise forfeited claim where the trial court has made an error affecting 'an important issue of constitutional law or a substantial right.' " (*Id*. at p. 963.) Our Supreme Court chose to exercise this discretion for three reasons in that case: (1) "the error [was] clear and obvious"; (2) "the error affected substantial rights by depriving [the defendant] of timely notice of the potential sentence he faced"; and (3) "the error was one that goes to the overall fairness of the proceeding." (*Id*. at p. 963.)

Johnson argues: "[T]he lack of pleading notice for personal use liability could have affected defense trial strategy on how strenuously to contest the gun enhancement allegation." This is insufficient. *Anderson* highlighted three reasons it was exercising its

discretion, none of which Johnson addresses. Furthermore, Johnson's trial strategy was to assert he was not one of the shooters, and he does not explain how this strategy would have changed had he had better notice of the precise firearm enhancement being charged. We consequently do not exercise our discretion to consider the merits of Johnson's claim and conclude the issue forfeited.

VI

*There Was No Cumulative Error*

Finally, Johnson argues that because every error "above each warrant[s] reversing the judgment, the cumulative effect of those errors requires reversal as well." We conclude there is no cumulative error having concluded none of the above issues constituted error. (*People v. Sapp* (2003) 31 Cal.4th 240, 287.)

DISPOSITION

The judgment is affirmed.


/s/
ROBIE, J.


We concur:


/s/
EARL, P. J.


/s/
WISEMAN, J.*

---

*        Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.