Filed 10/6/25

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. DANIEL OROZCO, Defendant and Appellant. | B329413 Los Angeles County Super. Ct. No. VA150179 ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

Good cause appearing, the published opinion in the above-entitled matter, filed on September 10, 2025, is hereby modified as follows:

On page three of the opinion, the paragraph beginning with "A witness telephoned a description of Orozco's car . . ." is deleted and replaced with the following paragraph: "A witness telephoned a description of Orozco's car, which allowed police instantly to connect it to the group. Officers found the car and Orozco, Nunez, Miranda, and Martinez Garibo, fresh from their mission."

On page seven of the opinion, the paragraph beginning with "We thus reverse Orozco's conspiracy conviction . . ." is deleted and replaced with the following paragraph: "We thus

reverse Orozco's conspiracy conviction.  This holding moots his argument that insufficient evidence supported the conspiracy conviction.  Orozco forfeited arguments about CACI No. 415 by omitting them from his opening papers.  The court's request for information about whether the court told the jury about the elements of conspiracy produced an affirmative answer and did not authorize new arguments."

On page nine of the opinion, the paragraph beginning with "The police investigation was swift . . ." is deleted and replaced with the following paragraph:  "The police investigation was swift and effective.  Officers solved the crimes within minutes and caught Orozco's group before the four could get rid of evidence or even disperse.  Orozco and his colleagues shot Garcia at about 9:18 p.m.  They shot Mares at about 9:44 p.m.  Witnesses alerted police, who shortly after 10:00 p.m. found Orozco and his three cohorts standing around Orozco's car—the car shown in the video.  Also around Orozco's car were the gun, cartridge magazine, and a spent casing.  All matched the bullets that killed Mares and wounded Garcia."

The petition for rehearing is denied.

[There is no change in the judgment.]

_____

STRATTON, P. J.            WILEY, J.            VIRAMONTES, J.

2

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B329413 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. VA150179 |
| DANIEL OROZCO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed in part, reversed in part, and remanded.

Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

We reverse Daniel Orozco's conviction for conspiracy to commit murder. The trial court ordered the addition of this count on the day of trial, but the preliminary hearing gave Orozco no proper notice of the new charge. We affirm Orozco's convictions for murder and attempted murder and reject Orozco's other arguments. Code citations are to the Penal Code.

I

On a deadly drive-by mission, Orozco ventured into hostile gang territory. A shooter in Orozco's car used Orozco's gun to wound one man and kill another. The jury convicted Orozco of murder, attempted murder, and conspiracy to murder.

The prosecution's opening statement explained its theory of the case.

Gang warfare was the motive. Varrio Norwalk had been in a longstanding war with the neighboring Chivas gang. Members of the Varrio gang would inspire fear, earn respect, and deter cooperation with police if they killed Chivas members. So the gang expert would testify. There was no contrary evidence.

On the mission were three full-fledged Varrio gang members: Orozco, Adrian Nunez, and Isaac Miranda. The prosecution's theory was that a fourth—Anthony Martinez Garibo—was not yet a jumped-in Varrio member. As an associate, Martinez Garibo would hang out and participate with the gang.

Martinez Garibo was the shooter. He sat in the front passenger seat holding Orozco's gun. Nunez drove. In back were Orozco and Miranda.

The group went into Chivas territory on a hunt.

At about 9:18 p.m. on March 9, 2019, Martinez Garibo fired at Chivas gang members, wounding one Kevin Garcia in the arm.

2

Nearby Chivas members returned fire, which prompted Orozco's group to flee. But back on home ground, Orozco and his fellows followed Lady Macbeth and screwed their courage to the sticking place. They returned to Chivas turf for more.

About 9:44 p.m. that night, Martinez Garibo shot Bryan Mares in the back. Martinez Garibo fired from the same car and with the same group.

Mares died. He belonged to no gang.

The shootings were about 20 minutes apart.

A witness telephoned a description of Orozco's car, which allowed police instantly to connect it with Orozco. At Orozco's home, officers found the car and Orozco, Nunez, Miranda, and Martinez Garibo, fresh from their mission.

When Miranda saw police, he tossed the pistol magazine from Orozco's gun. The officers quickly retrieved it. They found Orozco's pistol nearby too.

Officers arrested Orozco, Nunez, Miranda, and Martinez Garibo.

Bullets and casings from the shooting scenes matched the pistol, the ammunition inside the car, and a casing resting against the windshield and a wiper.

Orozco's phone data pinpointed the shooting scenes.

A detective suspected Martinez Garibo was putting in work to be jumped into Varrio Norwalk.

Police questioned Martinez Garibo for 70 minutes. The interrogators, however, delayed giving *Miranda* warnings (*Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*)) for 15 minutes. By that time, Martinez Garibo already had confessed to his role as the shooter. During this lengthy interrogation, one of Martinez Garibo's answers was that Orozco had not driven his

3

own car because "he was unable to" . . . [Orozco was] "[l]ike under the influence probably."

The tardiness of the *Miranda* warnings became an issue at Orozco's preliminary hearing.

The magistrate found a *Miranda* violation and suppressed Martinez Garibo's confession.

Despite excluding this confession, the magistrate ruled other evidence gave reasonable cause to believe Orozco was guilty of murder and attempted murder, as alleged in the information. On February 3, 2020, the magistrate held Orozco to answer.

Trial by jury began June 15, 2022. Orozco was the sole defendant. The prosecution tried the others separately.

On June 13, 2022, just before jury selection, the prosecution moved to amend the information to add a count charging Orozco with *conspiracy* to commit murder. Over Orozco's opposition, the court granted the motion.

At trial, Orozco's trial attorney made a strategic decision to introduce the suppressed Martinez Garibo confession. This confession became the fulcrum of Orozco's defense, which was that Orozco had been too intoxicated to form a criminal intent. By putting this confession into evidence, Orozco gained a basis for an intoxication defense without having to testify.

The jury convicted Orozco of murder, attempted murder, and conspiracy to commit murder. For Mares's murder, the court sentenced Orozco to 15 years to life. The court imposed a consecutive sentence of seven years to life for the attempted murder of Garcia. On the conspiracy conviction, the court imposed a stayed sentence of 25 years to life. Orozco's total sentence thus was 15 plus seven years to life, totaling 22 years to life.

## II

We reverse the conviction on the conspiracy count. The evidence at the preliminary hearing did not support this charge. The trial court had no basis for allowing the prosecution to add it.

We reject Orozco's other arguments.

### A

Adding the conspiracy count was error by any standard.

When California prosecutors use an information to charge a defendant, state law requires notice to defendants of the charges they face. A defendant thus cannot be prosecuted for an offense not shown by the evidence at the preliminary hearing or not arising out of the transaction upon which the commitment was based. (*People v. Calhoun* (2019) 38 Cal.App.5th 275, 303.)

This rule stems from the California Constitution. Our constitutional principle makes the preliminary hearing an independent check on prosecutorial discretion. (E.g., *Jones v. Superior Court* (1971) 4 Cal.3d 660, 666–667 [preliminary examination procedure protects people from groundless charges].)

The question thus becomes whether evidence at the preliminary hearing satisfied the elements of the crime of conspiracy to commit murder.

The answer is no.

Without Martinez Garibo's description of events, which the magistrate had suppressed, the evidence at the preliminary hearing could not support a murder conspiracy.

We need go no further than the first element of conspiracy: agreement.

The court instructed the jury that the first element of a conspiracy to commit first degree murder is that Orozco intended

5

to agree and did agree with Martinez Garibo, Nunez, or Miranda to kill intentionally and unlawfully. (See CALCRIM No. 563.)

This first element was, and is, uncontested. It is the vital element for our purposes. This element required evidence Orozco agreed to kill someone.

Once the magistrate suppressed Martinez Garibo's confession, however, there was no evidence like that at the preliminary hearing.

On appeal, the prosecution maintains that, even without Martinez Garibo's statement, the evidence sufficed. According to the prosecution, this evidence showed Varrio gang members, including Orozco, were together in a car when they entered rival Chivas territory. A gang expert testified at the preliminary hearing that gang members typically "put in work" for the gang. In other words, gang members typically act to support the gang's goals of killing rivals and intimidating potential witnesses.

This evidence does not show Orozco agreed that someone in his group of four would kill a human being on the night in question.

There was no evidence that murder is the *only* action gang members take when they gather. In other words, no evidence supported the notion that, each and every time one gang member meets others, they *inevitably* murder someone.

On this particular night, then, the four could have had plans other than murder. The purpose of the car trip could have been to get a meal, to rescue a friend from a jam, or to vandalize something. Perhaps the car trip had no agreed purpose at all. (Cf. Model Pen. Code, § 5.03 ["purpose" is the required mental state for conspiracy].)

6

Our Supreme Court recently cautioned that proof of common gang membership alone is not enough to establish participation in a criminal conspiracy. "The effect of such a rule would be to criminalize mere association with gang members, which the law forbids." (*People v. Ware* (2022) 14 Cal.5th 151, 168.)

In an alternative argument, the prosecution contends Orozco "should not be permitted to use the exclusion of [Martinez] Garibo's statement at the preliminary hearing to try to benefit him by preventing a conspiracy charge, yet thereafter, acquiesce in the admission of the statement at trial to try to benefit him by introducing an intoxication defense."

The prosecution forfeits this one-sentence comment by failing to offer legal logic or authority in its support.

We thus reverse Orozco's conspiracy conviction. This holding moots his argument that insufficient evidence supported the conspiracy conviction.

B

Orozco incorrectly contends his trial lawyer was ineffective because the lawyer did not object to the introduction of Martinez Garribo's confession, which the magistrate had suppressed at the preliminary hearing. But this experienced trial lawyer was following a careful defense strategy that was Orozco's best defense. On the record at trial, Orozco personally agreed with his lawyer's plan. His appellate argument to the contrary is not even 20-20 hindsight, for even in hindsight Orozco's appeal fails to identify some better strategy than the one his trial lawyer pursued.

We summarize governing law. A defendant claiming ineffective assistance of counsel must show deficient performance

by counsel that prejudiced the defense. On direct appeal, we find deficient performance only if 1) the record shows counsel had no rational tactical purpose for the challenged act or omission, 2) counsel was asked for a reason and failed to provide one, or 3) no satisfactory explanation could exist. (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.)

We defer to counsel's reasonable tactical decisions and presume counsel acted within the wide range of reasonable professional assistance. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Orozco's trial problem was not a faulty trial lawyer. The problem was overwhelming proof of guilt. This challenging situation left his experienced attorney searching for the least bad way to cope with what was, for Orozco, a disastrous predicament of his own making.

We marshal the evidence confronting Orozco's trial lawyer.

The prosecution's expert said the motive for these gang shootings was a longstanding war between Orozco's gang and a neighboring gang. At trial, Orozco did not challenge this motive. Nor did Orozco dispute his own Varrios gang membership.

Other objective data were damning.

Orozco owned the car. His car carried the shooter to the precise locations of the two shootings, at the exact time they occurred. Location history data from Orozco's mobile phone matched up, proving Orozco was in his car when his group gunned down Garcia and Mares.

One of the shootings was on video. The video showed Orozco's car.

Orozco did not dispute that he owned this car, or that he was in it during the two shootings.

8

The police investigation was swift and effective. Officers solved the crimes within minutes and caught Orozco's group before the four could get rid of evidence or even disperse. Orozco and his colleagues shot Garcia at about 9:18 p.m. They shot Mares at about 9:44 p.m. Witnesses alerted police, who arrived at Orozco's place shortly after 10:00 p.m. There they found Orozco and his three cohorts standing around Orozco's car—the car shown in the video. Also around Orozco's car were the gun, cartridge magazine, and a spent casing. All matched the bullets that killed Mares and wounded Garcia.

Orozco's group made transparent, unsuccessful, and incriminating efforts to hide the gun and the magazine.

Orozco's mobile phone had pictures of the gun that was the instrument of the attacks.

Orozco's car had a bullet hole in the door.

The record offers no suggestion the prosecution was offering some way to settle the case.

Faced with this tsunami, Orozco's attorney decided the best hope was to argue Orozco was too intoxicated to form a criminal intent: that he was too drunk to drive his own car. The Martinez Garibo confession gave some, albeit slim, support for the argument Orozco was asleep in a drunken stupor the whole time.

On appeal, Orozco's appellate counsel identifies no better approach to the case. No superior alternative is apparent to us.

This defense theory was the least unattractive approach among even less plausible alternatives. It was the best reaction to a bad situation.

It is *effective* assistance of counsel to take a long shot when it is your only shot.

In sum, Orozco's trial lawyer was, at the very least, competent. He did the best job possible under terrible conditions. Orozco's second appellate argument fails.

C

Orozco argues the prosecution misstated the law in its opening summation.

Orozco objects to this statement by the prosecutor.

"[I]t does not take a long period of time to premeditate and deliberate what you're going to do. Some examples. A hitter in baseball might be at the plate, sees a pitch, makes decisions quickly about whether they're hitting a fast ball or it's a curve. . . . All of us in our car we do premeditation and deliberation when we come to a stop sign."

For purposes of analysis, we assume this was error and Orozco has preserved it for appeal.

Under any standard of review, this assumed error could not have affected the verdict.

Orozco's defense mooted the issue of premeditation and deliberation. His defense was not that his murderous decision was sudden and rash rather than premeditated and deliberate. Rather, Orozco's defense was that, on account of intoxication, he made *no* blameworthy decision at all: he was too drunk to form *any* culpable mental state. The prosecution argued there was no evidence of intoxication. The jury accepted the prosecution's view of the facts.

The jury accepted the theory Orozco was on a mission that involved gunning down one rival and then shooting another. It was a hunt. The hunt was planned. The issue of premeditation and deliberation could not have affected the verdict.

10

D

Orozco claims there was cumulative error. The court's decision to add the conspiracy count was an error, as we have adjudicated. There were no other errors.

E

Orozco attacks his life sentence for attempted murder. He argues he had no proper notice the prosecution was seeking to convict him of an attempted murder carrying the potential for life imprisonment. He consequently claims the pleading defect meant the court imposed an unauthorized sentence.

Under the California Supreme Court authority of *People v. Houston* (2012) 54 Cal.4th 1186, 1225–1229 (*Houston*), Orozco forfeited this argument.

Orozco correctly points out the information failed to allege his attempted murder of Kevin Garcia was willful, deliberate, and premeditated. The prosecution does not dispute this omission.

Orozco argues that, therefore, the trial court was wrong to use this premeditation factor to increase his sentence to an indeterminate term of seven years to life. (See *Houston, supra,* at p. 1225 [describing statutory requirement in § 664, subd. (a)].) Orozco asks us to remand and to instruct the trial court to reduce this sentence "from seven years to life to a determinate term of five, seven, or nine years. (§ 664, subd. (a).)" In short, Orozco says a pleading defect means his sentence of seven years to life is unauthorized.

Orozco forfeited this argument because his attorney never objected to the pleading defect. There was no objection because the attorney understood the prosecution was proceeding in the

11

most serious manner and thus was seeking the maximum possible sentence.

This is plain from the way this prosecution took place, as we will explain.

First, however, we begin with the words of the statute.

Subdivision (a) of section 664 provides that, "if the crime attempted is willful, deliberate, and premeditated murder . . . the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole.  If the crime attempted is any other one in which the maximum sentence is life imprisonment or death, the person guilty of the attempt shall be punished by imprisonment in the state prison for five, seven, or nine years.  The additional term provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, *deliberate, and premeditated is charged in the accusatory pleading* and admitted or found to be true by the trier of fact."  The italics are ours.

In short, this statute requires the information to charge the attempted murder was deliberate and premeditated.  Orozco's information did not charge that.

We identify the purpose of this statutory requirement.

The purpose is fair notice.  The information must contain this notice so the defense can make informed decisions about the case, including whether to plead guilty, how to allocate resources, and what strategy to use at trial.  It also ensures defendants have notice of the potential sentence on the day of sentencing. (*People v. Anderson* (2020) 9 Cal.5th 946, 964 (*Anderson*).)

The pleading defect in this case, however, did not mean Orozco and his attorney were ignorant of the prosecution's plan of

12

attack. To the contrary, the defense was fully on notice. The facts of this case show this.

We begin with the prosecution's trial brief and continue from there.

Before the trial started, this trial brief explained its theory of the case on June 8, 2022. This theory was that Orozco was a Varrio gang member and he and his fellow gang members "drove into Chivas territory looking for a rival to shoot." The motive and the conduct, according to the prosecution, was deliberate and premeditated.

This trial brief continued to explain that, when Garcia's Chivas gang colleagues fired back at Orozco's group, the group retreated. Orozco's group then returned to Chivas turf to hunt some more, ultimately shooting Bryan Mares to death.

Again, there could be no mistake that the prosecution's theory was that Orozco's decisions to embark and to return to this hunt were deliberate and premeditated.

The prosecutor's opening statement likewise proceeded on a theory that Orozco and the others were on a "mission" that would benefit "them and the Varrio Norwalk gang." Orozco's purpose, the prosecutor argued, was to accomplish a drive-by shooting resulting in murder.

Orozco's opening statement, by contrast, aimed to convince the jury Orozco was "inebriated" and "passed out in the back seat." As we have seen, Orozco's defense was not that he made an undeliberated and unpremeditated decision. Instead, the defense was Orozco made no decision at all. Orozco had been too drunk, his attorney argued, to form any culpable mental state.

The jury instructions reemphasized the notice to Orozco. With our italics, these instructions told jurors that, if they found

13

Orozco guilty of attempted murder, "you must then decide whether the People have proved the additional allegation the attempted murder was done willfully, and *with deliberation and premeditation. . . .* The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find this allegation has not been proved."

Orozco did not object to this instruction, either during the conference with the court about jury instructions or, in open court, when the court read the instructions to the jury.

There is more.

Orozco filed a sentencing memorandum in accord with his understanding that the prosecution indeed had been accusing him of an attempted murder that was premeditated in character. Again with our emphasis, Orozco's memorandum described the accusation as "Attempted Murder *with Premeditation and Deliberation.*"

Orozco thus had ample notice. He understood the situation completely, which is why he wrote (again with our emphasis), that "the court *must* impose a 7 years to life sentence."

This is the very sentence Orozco now is telling us the court *must not* impose.

This is forfeiture.

Because Orozco was on adequate notice about the charge and the sentence he was facing, his contrary appellate argument is incorrect.

The Supreme Court decision in *Houston* controls our analysis. "*Houston* effectively rejected the notion that a pleading defect necessarily results in an unauthorized sentence." (*Anderson*, *supra*, 9 Cal.5th at p. 962.)

14

*Houston* held defendants forfeit this claim of an unauthorized sentence when they receive "adequate notice" of the sentence they face. (*Houston, supra,* 54 Cal.4th at p. 1228.)

When determining whether the notice was adequate, a consideration is whether the defendant received notice too late to cure the defective pleading. (*Anderson*, *supra*, 9 Cal.5th at p. 964.)

Here, however, Orozco got effective notice from the outset of the trial. This timely notice matched his own understanding of the case.

Orozco seeks to distinguish *Houston*. This effort is unsuccessful.

Orozco tells us the *Houston* court "relied on two key facts: 1) the trial judge notified the defendant before the case was submitted to the jury that he could be sentenced to life in prison for attempted premeditated murder; and 2) the jury was properly instructed and expressly found appellant acted with premeditation in attempting to murder his victims."

What was true in *Houston* is true here as well. Orozco's counsel comprehended the prosecution's allegation that the attempted murder was deliberate and premeditated, as we have seen. And the jury was properly instructed, and then expressly found that Orozco acted with premeditation in attempting to murder Kevin Garcia. Orozco's efforts to distinguish *Houston* are unavailing.

Orozco also cites *People v. Perez* (2017) 18 Cal.App.5th 598 (*Perez*). We summarize *Perez*.

At a party, the defendant in *Perez* began arguing with other men. This argument became heated. A woman sought to calm the defendant, saying "It's okay, baby. They're cool. Like, they

helped me out." (*Perez, supra*, 18 Cal.App.5th at p. 602.) Unmollified, the "defendant pulled out a gun from his waistband and began shooting." (*Ibid.*)

The gunplay in *Perez* was sudden and explosive. It was a classic rash decision: get mad, lose control, start shooting. It was not a strategy formulated in advance.

Our result is consistent with *Perez* because *Perez* is so different. *Perez* did not involve a planned murder excursion. Neither did the defense attorney in *Perez* grasp from the outset the prosecution's aim of proving the attempted murder was deliberate and premeditated. The defense in *Perez*, for instance, never submitted a defense sentencing memorandum insisting the trial court "*must*" impose the very sentence that was the target of his appellate attack.

We thus distinguish *Perez*, apply *Houston*, and hold Orozco forfeited this argument.

## DISPOSITION

We affirm the convictions for murder and attempted murder. We reverse the conspiracy conviction and remand the case for further proceedings consistent with this opinion.


WILEY, J.


We concur:


STRATTON, P. J.          VIRAMONTES, J.