Filed 1/9/26  P. v. Kamack CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAMELLE LARON KAMACK,<br><br>    Defendant and Appellant. | B337227<br><br>(Los Angeles County<br>Super. Ct. No.<br>YA069698) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura C. Ellison, Judge.  Vacated in part and remanded with directions.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill, Kathy S. Pomerantz and Lauren

Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2010, a jury convicted Ramelle Laron Kamack (Kamack) of murder and attempted murder and found true gang enhancements and gang-related firearm enhancements. He was sentenced to serve 75 years to life in prison. In 2023, the Secretary of the California Department of Corrections and Rehabilitation (CDCR) recommended recall and resentencing pursuant to Penal Code section 1172.1, subdivision (a)(1),[1] based on Kamack's "exceptional conduct while incarcerated." The trial court recalled the sentence and resentenced Kamack to 40 years to life.

On appeal, Kamack argues the trial court abused its discretion by not further reducing his sentence. He also contends that Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333) applies to his case and compels vacating the true findings on the gang enhancements and gang-related firearm enhancements.

Assembly Bill 333 amended section 186.22 to require the People to prove additional elements that were not previously required for a gang enhancement under section 186.22, subdivision (b)(1), and a gang-related firearm enhancement under section 12022.53, subdivision (e)(1). Because the evidence in Kamack's 2010 trial does not support the imposition of gang enhancements and gang-related firearm enhancements under Assembly Bill 333, we vacate the jury's true findings on those

_____

[1]     All further statutory references are to the Penal Code.

enhancements, vacate Kamack's sentence, and remand for further proceedings. Our disposition renders moot Kamack's other arguments.

## I.
## BACKGROUND

### A. Facts

On July 3, 2007, Adriel Deayon (Deayon) drove her coworker, Joshua Davis (Davis), home. (*People v. Kamack* (Oct. 7, 2011, B222456), 2011 WL 4639897, at p. *2 [nonpub. opn.] (*Kamack*).) "As Davis and Deayon sat in Deayon's car, Davis's cousin, Trevon Greer [(Greer)], pulled up behind them and parked. Davis got out of Deayon's car and spoke with Greer briefly while Deayon waited in her car. Davis then went to the driver's side window of Deayon's car and leaned into the window to speak with her. At that moment, another car pulled next to Deayon's car. Deayon saw sparks and heard four or five gunshots coming from the direction of the other car. . . . After the shots, the car sped away. She saw Davis fall." (*Ibid.*)

"From the driver's seat of his car, Greer heard eight or nine gunshots and saw flashes coming from the rear passenger window of the other car. Greer identified the car as a silver Jaguar . . . ." (*Kamack, supra,* B222456, 2011 WL 4639897, at p. *2.)

"Davis died as a result of multiple gunshot wounds. He was shot in the head, back, and thigh." (*Kamack, supra,* B222456, 2011 WL 4639897, at p. *2.)

Within minutes of the shooting, the silver Jaguar was spotted from a sheriff's helicopter. (*Kamack, supra,* B222456, 2011 WL 4639897, at p. *2.) Sheriff's deputies conducted a stop

3

of the Jaguar on the ground. (*Ibid.*) Kamack was in the driver's seat, Martell Byrd (Byrd) was in the front passenger seat, and Calvin Phipps (Phipps) was in the backseat. (*Ibid.*) The three suspects were placed in the rear of a patrol car, where they made incriminating statements. (*Ibid.*) "A subsequent examination of the Jaguar revealed it had graffiti written in dust on the rear window and on top of the car. The writing included 'Inglewood Family Blood,' and 'CK' with the letter 'C' crossed out." (*Id.* at p. *3.)

After their arrest, Kamack and Byrd were put in the same holding cell, and their conversation was recorded. (*Kamack, supra,* B222456, 2011 WL 4639897, at p. *3.) They continued to make incriminating statements, including Kamack remarking: " 'We should have (inaudible) soon as we got that first "CK" instead of trying to go on another one.' " (*Ibid.*) Phipps later joined Kamack and Byrd in the holding cell. (*Ibid.*) "Byrd said, 'I know I should never try to get another CK . . . . But I was trying to be greedy. I was trying to get two in one night.' Phipps replied, 'That would'a been nice.' " (*Ibid.*)

"Detective Kerry Tripp testified as a gang expert for the prosecution. He said that Phipps was a member of the Inglewood Family Blood[] criminal street gang, whereas Kamack and Byrd were members of the Avenue Piru Blood gang. These two Blood gangs were friendly, and it was not unusual for members of the two gangs to commit crimes together. The location where the shooting occurred was claimed by a rival gang, the 111th Street Neighborhood Crips. Detective Tripp found no evidence that Davis was a gang member, however. The detective testified that 'CK' stands for 'Crip killer.' Detective Tripp was of the opinion that the charged crimes were committed for the benefit of the

4

Blood gangs. The shooting would raise the status of the participants within their gang." (*Kamack*, *supra*, B222456, 2011 WL 4639897, at p. *4.)

Detective Tripp testified about four predicate offenses. In the first, Ryan Brown (Brown) was convicted of attempted murder. In the second, Davion Hays (Hays) was convicted of murder and two counts of attempted murder. In the third, Efeosa Idemudia (Idemudia) was convicted of robbery. In the fourth, Michael Irvin (Irvin) was convicted of robbery. Brown and Hays were members of the Inglewood Family Blood gang. Idemudia and Irvin were members of the Avenue Piru Blood gang.

## B. Procedural History

In 2010, a jury found Kamack guilty of first degree murder (§ 187, subd. (a); count 1) and willful, premeditated, and deliberate attempted murder (§§ 664, 187, subd. (a); count 2). On both counts, the jury found true firearm enhancement allegations (§ 12022.53, subds. (b)–(e)(1)) and that the crimes were committed for gang purposes (§ 186.22, subd. (b)(1)(C)).

The trial court sentenced Kamack to a total term of 75 years to life in prison, comprised of 25 years to life for the murder, a consecutive life term for the attempted murder, and a separate 25-year-to-life firearm enhancement under section 12022.53, subdivisions (d) and (e)(1), attached to each count.[2] Other enhancements were imposed and stayed. On direct appeal, this Court struck 10-year gang enhancements on both counts and ordered corrections to the abstract of judgment. (*Kamack*, *supra*,

---

[2] In the trial court and on appeal, the parties misstate Kamack's aggregate sentence as 82 years to life.

5

B222456, 2011 WL 4639897, at p. *19.)  In all other respects, the judgment was affirmed.  (*Ibid.*)

In August 2023, the Secretary of the CDCR sent a letter to the trial court recommending that Kamack's sentence be recalled and that he be resentenced pursuant to section 1172.1, subdivision (a)(1).[3]  The Secretary wrote that Kamack had "exhibited exceptional conduct through [his] ability to obey rules and regulations" and had "demonstrated a commitment to [his] rehabilitation through voluntary participation in various self-help programs, and vocational and educational programs."  Kamack had remained disciplinary free since February 2014.  The Secretary did not recommend a particular sentence.

The District Attorney of Los Angeles County joined in the Secretary's request for recall and resentencing, contending that it was "in the interests of justice to resentence Kamack to a term which will result in his release into a residential reentry program."  The District Attorney asked the trial court to resentence Kamack, on count 1, to the midterm of six years for the lesser crime of voluntary manslaughter and a consecutive term of 10 years for the section 12022.53, subdivision (b) firearm

---

[3]     Section 1172.1, subdivision (a)(1), authorizes a trial court, "at any time upon the recommendation of the [S]ecretary" of the CDCR to "recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, . . . provided the new sentence, if any, is no greater than the initial sentence."  The court may, in the interests of justice, "[r]educe a defendant's term of imprisonment by modifying the sentence" and "[v]acate the defendant's conviction and impose judgment on any necessarily included lesser offense or lesser related offense . . . ."  (§ 1172.1, subd. (a)(3)(A)–(B).)

6

enhancement, and on count 2, a concurrent midterm sentence of three years for the lesser crime of assault with a firearm. The District Attorney requested that all remaining premeditation, firearm, and gang enhancements be stricken. Kamack joined the CDCR's and the District Attorney's requests for recall and resentencing.

At the hearing on February 21, 2024, the trial court recalled the sentence but rejected the parties' proposal that Kamack be resentenced to a 16-year determinate term. The court explained that, in addition to rehabilitation, a purpose of imprisonment is punishment, which should be proportional, reasonable, and fair. Kamack had "killed one person, . . . attempted to kill another, and he was . . . principally armed with a firearm in this case." One family had "lost a loved one for the rest of their lives[.]" The court was "persuaded by how well [Kamack] ha[d] been doing in prison" and had also "taken into consideration his youth."[4] Nevertheless, the court did not "think this [was] a time served case[,]" as "[16] years on two very serious charges" was not "a reasonable proportional sentence."

The trial court exercised its discretion to strike the section 12022.53, subdivisions (b) and (e)(1) firearm enhancement, and resentenced Kamack to serve 25 years to life on the murder and a consecutive 15 years to life on the attempted murder. The court stayed the remaining firearm enhancements.

Kamack's appeal is timely.

---

[4] Kamack was 20 years old when he committed the underlying crimes.

## II.
## DISCUSSION

### A. Assembly Bill 333

Section 186.22, subdivision (b)(1), is a gang enhancement, mandating additional punishment for "a person who is convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members[.]" Firearm enhancements under section 12022.53, subdivisions (b), (c), and (d), can apply vicariously to an aider and abettor when the prosecution pleads and proves that the defendant violated section 186.22, subdivision (b). (§ 12022.53, subd. (e)(1); see also *People v. Anderson* (2020) 9 Cal.5th 946, 953.)

Effective January 1, 2022, Assembly Bill 333 "change[d] . . . the law on gang enhancements" by amending section 186.22. (*People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*).) "In order to demonstrate the 'pattern of criminal gang activity' element of a ' "criminal street gang," ' [citation] the statute now requires, among other things, proof of at least two enumerated predicate offenses 'committed on separate occasions or by two or more members' which 'commonly benefited a criminal street gang,' and that the common benefit be 'more than reputational.' [Citation.] The revised statute also provides, '[e]xamples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant.' [Citation.]" (*People v. Lamb* (2024) 16 Cal.5th 400, 448 (*Lamb*).)

Assembly Bill 333's substantive changes to section 186.22 apply retroactively to all nonfinal cases under *In re Estrada* (1965) 63 Cal.2d 740. (*People v. Lopez* (2025) 17 Cal.5th 388, 396 (*Lopez*); *Tran*, *supra*, 13 Cal.5th at pp. 1206–1207.) This includes final judgments that are reopened because a sentence is vacated or a commitment is recalled for resentencing. (See *Lopez*, *supra*, 17 Cal.5th at p. 398 ["A defendant whose sentence is vacated ' "regain[s] the right to appeal whatever new sentence was imposed[,]" ' and the judgment becomes nonfinal"]; *People v. Salgado* (2022) 82 Cal.App.5th 376, 378 [following a recall and resentencing under former § 1170, subd. (d), the criminal judgment was no longer final, and the defendant was entitled to the benefit of Assembly Bill 333].)

Kamack argues that he is entitled to the benefits of Assembly Bill 333's ameliorative changes to section 186.22. Applying de novo review, we agree.[5] (*People v. Corpening* (2016) 2 Cal.5th 307, 312 [the application of law to undisputed facts is a question of law subject to de novo review].)

When Kamack's sentence was recalled, "the trial court regained the jurisdiction and duty to consider what punishment was appropriate for him, and [Kamack] regained the right to appeal whatever new sentence was imposed. His judgment thus became nonfinal, and it remains nonfinal in its present posture . . . ." (*People v. Padilla* (2022) 13 Cal.5th 152, 161–162.)

---

[5] The People argue that Kamack forfeited the issue by failing to raise it in the trial court. We consider the merits of this claim because it affects Kamack's substantial rights (§ 1259), and to forestall his possible ineffective assistance of counsel claim (see *People v. Welch* (1999) 20 Cal.4th 701, 759–760; *People v. Monroe* (2022) 85 Cal.App.5th 393, 400).

Pursuant to Assembly Bill 333, the imposition of a section 186.22 gang enhancement now requires proof "that the benefit to the gang was more than reputational," which "essentially adds a new element to the enhancement." (*People v. Sek* (2022) 74 Cal.App.5th 657, 668 (*Sek*).)  As the parties agree, the evidence adduced at Kamack's trial was insufficient to establish that the predicate offenses benefitted the gang beyond enhancing its reputation.[6]  (See *Lamb, supra,* 16 Cal.5th at p. 455 ["the absence of evidence concerning the circumstances of the predicate offenses and the actual common benefit to the gang suggests a rational juror could have found the omitted requirements to be unsupported"].)  Accordingly, we must vacate the true findings on the gang enhancements under section 186.22, subdivision (b)(1), as well as the true findings on the gang-related firearm enhancements under section 12022.53, subdivisions (b), (c), (d), and (e)(1).  (*People v. Lee* (2022) 81 Cal.App.5th 232, 239–240; *People v. Perez* (2022) 78 Cal.App.5th 192, 206, fn. 11.)

" 'Because we do not reverse based on the insufficiency of the evidence required to prove a violation of the statute as it read at the time of trial, the double jeopardy clause of the Constitution will not bar a retrial.  [Citations.]  " 'Where, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is

---

[6]  In reaching this conclusion, we have reviewed relevant portions of the reporter's transcripts from Kamack's trial.  The People concede that, "although Detective Tripp testified about two predicate crimes committed by Avenue Piru Blood gang members, the evidence did not show that any of the prior offenses benefitted the gang in a way that was more than reputational."

proper and the reviewing court does not treat the issue as one of sufficiency of the evidence.' [Citation.]" [Citation.]' [Citations.]" (*Sek*, *supra*, 74 Cal.App.5th at pp. 669–670.) On remand, the People may retry Kamack on the gang enhancements and gang-related firearm enhancements under the law as amended by Assembly Bill 333.

**B. All Other Issues Are Moot**

Whether the People decide not to retry the enhancements, or at the conclusion of such a retrial, Kamack is entitled to a full resentencing. (*People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances[]' "]; see also *People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425 ["the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant"].) Accordingly, our vacating the gang enhancements and gang-related firearm enhancements renders moot all other arguments made by Kamack in this appeal.

11

## III.
## DISPOSITION

The true findings on the gang enhancements (§ 186.22, subd. (b)(1)) and gang-related firearm enhancements (§ 12022.53, subds. (b)–(e)(1)) are vacated.  The sentence is vacated, and the case is remanded.  On remand, the People may retry the enhancement allegations under the law as amended by Assembly Bill 333.  If the People do not retry the enhancements, or at the conclusion of a retrial, the trial court shall conduct a full resentencing.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

SIGGINS, J.*

We concur:

LUI, P. J.

CHAVEZ, J.

---

*       Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.